899 P.2d 594

Enrique **GONZALES** and Berlin Padilla, as Personal Representative of the Estate of Ricardo Garduno, deceased, Plaintiffs–Appellees,

v.

**SURGIDEV CORPORATION**, a corporation, Defendant–Appellant.

No. 22009.

Supreme Court of New Mexico.

June 13, 1995.

Oman, Gentry & Yntema, P.A., Nicholas R. Gentry, Todd W. Rogers, Albuquerque, for appellant.

Carolyn N. Merchant, Albuquerque, Frank Spring, Helena Gorochow, Albuquerque, for appellees.

## OPINION

BACA, Chief Justice.

Appellant Surgidev Corporation appeals the imposition of sanctions in the amount of $151,000 by the trial court while the underlying case was pending on appeal. We address two issues: (1) Whether the court had jurisdiction to impose sanctions, and if so, (2) whether the imposition of sanctions was an abuse of discretion. We review this case pursuant to SCRA 1986, 12–102(A)(1) (Repl. Pamp.1992) (appeals from district court sounding in contract shall be taken to Supreme Court), and affirm.

### I

The trial underlying the imposition of sanctions involved personal injuries to Appellees Enrique Gonzales and Ricardo Garduno.[1] Each was blinded in one eye as a result of the use of a defectively designed and marketed intraocular lens (IOL), termed Style 10. The jury found Appellant 60 percent liable for the injuries and returned a total judgment of $1,179,990.18. Gonzales

was awarded $434,990.18 in compensatory damages and $350,000 in punitive damages. Garduno was awarded $45,000 in compensatory damages and $350,000 in punitive damages. Judgment was entered on January 18, 1991. In the trial below, Appellant challenged, among other matters, the state court's jurisdiction based on federal preemption under the Medical Device Amendments of 1976 to the Food, Drug and Cosmetic Act of 1938, 21 U.S.C. § 360c–k (1988). Appellees requested certification to this court to determine whether their state law claims were preempted by federal law. This preemption matter was one of the issues addressed on appeal in *Gonzales v. Surgidev Corp.*, 120 N.M. 133, 139, 899 P.2d 576, 582 (1995) (No. 21,703) [hereinafter *Surgidev I*].

On January 21, 1992, at the threat of a new trial, Appellees requested leave to depose Appellant's former counsel, Hugh Jaeger, under SCRA 1986, 1–027(B) (Repl.Pamp.1992) (perpetuating testimony while appeal is pending), to preserve evidence about document production, violations of court orders, and damaging information concerning the Style 10 IOL. The court took notice of Appellant's efforts to conceal evidence during the trial and granted the request. The first deposition was taken on February 29, 1992. Appellant moved to have any deposition by Jaeger be put under seal, arguing that his statements might violate attorney-client privileges and that in-camera rulings by the court might be required before the testimony could be used for any purpose. This motion was granted. Alleging that Appellant had engaged in "obstructive tactics" during the deposition, Appellees deposed Jaeger a second time on March 6, 1993, in order to complete the first deposition.

On May 6, 1993, Appellees moved to unseal the deposition. In the telephonic conference concerning this motion, the court commented that the issue of sanctions for discovery abuses remained unresolved. The court instructed Appellees to draft an order to unseal the deposition.

1. Berlin Padilla is the Personal Representative of the Estate of Ricardo Garduno, deceased.

On May 13, 1993, after a second telephonic presentment hearing concerning the drafted order, the court again expressed its frustration with Appellant. During this hearing, Appellant objected to the phrase in the drafted order, "The Court being fully advised." Appellant argued that this statement did not adequately express the fact that the court had reviewed only briefs and affidavits and therefore was not "fully advised." Appellant also argued that the "decision [to unseal the deposition had] to be made question by question, line by line" before the court could order Jaeger's deposition to be unsealed. The court stated that it found these objections "absurd" and that these arguments consisted of "maneuvering" and "machinations" that were "obstructive." The court noted that "[a]t some point if we have to have a hearing for everything that is here so that Surgidev can stall a little longer, I'm going to start taking some sanctions against them." The court granted the motion to unseal the deposition upon finding that the attorney-client privilege no longer existed because Jaeger's employment with Appellant had terminated by December 1990, at the latest. The court also found that Appellant engaged in "real stonewalling" with respect to taking Jaeger's deposition. The court noted that even the jury had grave concerns that Appellant had concealed facts in *Surgidev I*. The court then asked Appellees to "set your hearing involving sanctions, based upon the information contained in the deposition."

On May 26, 1993, Appellees requested sanctions against Appellant, based on Jaeger's deposition and the deposition of Appellant's president, Dennis T. Grendahl, taken on March 4, 1993, in preparation for a similar trial in New Jersey. In his deposition, Jaeger testified that he stored approximately 300 boxes of material. Appellant never requested these documents from Jaeger during the *Surgidev I* trial or informed Appellees of their existence, even though some of the materials were relevant to the trial. Appellant's counsel retrieved this material in December 1990, about two weeks after the end of the trial. The trial ended on November 16, 1990, and final judgment was entered on January 18, 1991. Appellant then prepared an incomplete inventory of this material that

indicated 100 boxes were possibly relevant in product liability litigation. The boxes contained internal memoranda, sales materials, and tapes. Jaeger also testified that when Appellant's counsel retrieved the documents, they stated that they intended to "deep-six" the documents and that they were aware that Appellant was in contempt of court.

In addition, during *Surgidev I* Appellant and its counsel concealed the existence of Food and Drug Administration (FDA) transcripts concerning the pressure FDA brought to bear on Appellant to remove the Style 10 IOL from the market. Instead of providing discovery information that was damaging or harmful, Appellant was evasive about the reason the Style 10 IOL was taken off the market, the criticism of the lens, and the existence of internal and sales memoranda about the lens. On January 14, 1994, the court entered a final judgment ordering sanctions in the amount of $151,000. This judgment forms the basis for this appeal.

## II

Appellant raises two arguments to support its contention that the court lacked subject matter jurisdiction. First, Appellant asserts that the issue of discovery abuses was raised in the lower court and was part of the basis for the award of punitive damages. Therefore, the award of sanctions simply provides Appellees with additional punitive damages. According to Appellant, this constitutes reopening the judgment. *See* SCRA 1–060(B)(2), (3) (permitting relief from final judgment when newly discovered evidence or misconduct of adverse party shown). Appellant argues that newly discovered evidence or fraud cannot, under SCRA 1–060(B)(6), justify reopening the judgment beyond one year after final judgment is entered. Therefore, the court erred in awarding sanctions, which were really just additional punitive damages, more than two years after entry of the judgment. We disagree with Appellant that these sanctions are additional punitive damages under SCRA 1–060.

Appellant's second argument is that SCRA 1–037(B) and (D) permit the imposition of sanctions only by the court in which an action

is pending. Appellant contends that the trial court no longer had jurisdiction after rendering final judgment. We disagree. A court retains jurisdiction under its inherent authority to impose sanctions at any time, subject only to constitutional limitations or equitable defenses.

### A

■ We first consider whether the award for punitive damages also included sanctions for Appellant's abuse of the discovery process. We note that Appellant never argued, briefed, or discussed in *Surgidev I* that the award for punitive damages included sanctions for abuse of the discovery process. Likewise, the instructions submitted to the jury do not mention any discovery abuses by Appellant. Rather, the jury received instructions that Appellees bore the burden of proving that Appellant's "misconduct showed an utter indifference to or conscious disregard for the safety of others or was grossly negligent; and [that] punitive damages should be awarded." *Cf.* SCRA 13–1827 (Repl.Pamp.1991). For exemplary damages, the jury instruction stated that, should the jury "find that the acts of Defendant were willful, wanton, malicious, reckless, or grossly negligent," it could award exemplary or punitive damages that were "reasonably related to the actual damages and injury and not disproportionate to the circumstances." *See id.* The jury instructions made no mention of abuse of the discovery process or Appellant's conduct toward the tribunal.

Appellant bases its argument on the fact that during *Surgidev I* its Senior Regulatory Analyst, Paul Mason, was cross examined about the company's reluctance to provide information during discovery. We agree with Appellant that its recalcitrance was brought before the jury. We disagree, however, that the testimony during *Surgidev I* was offered for the purposes of or sufficient to support an award of sanctions. The purpose of Mason's testimony was to provide the jury with evidence it could weigh in determining whether an award of punitive damages was proper.

■ The award of punitive damages is based on a party's misconduct towards the individual. *See State v. Powell,* 114 N.M. 395, 400, 839 P.2d 139, 144 (Ct.App.1992) (Punitive damages "are private fines levied by civil juries to punish reprehensible conduct and to deter its future occurrence."). Punitive damages may be awarded when a party's conduct is "malicious, willful, reckless, wanton, grossly negligent, fraudulent, or in bad faith." SCRA 13–1827. "The purpose of punitive damages is to punish the wrongdoer and to deter the wrongdoer and others in a similar position from such misconduct in the future." *Conant v. Rodriguez,* 113 N.M. 513, 517, 828 P.2d 425, 429 (Ct.App.1992); *quoted in Duncan v. Henington,* 114 N.M. 100, 102, 835 P.2d 816, 818 (1992). Punitive damages may not be awarded unless there is an underlying award of compensation for damages. *See* SCRA 13–1827. Punitive damages "are not compensation for injury." *Powell,* 114 N.M. at 400, 839 P.2d at 144 (quoting *Gertz v. Robert Welch, Inc.* 418 U.S. 323, 350, 94 S.Ct. 2997, 3011, 41 L.Ed.2d 789 (1974)).

■ An award of sanctions is based on a party's misconduct towards the court. *See United Nuclear Corp. v. General Atomic Co.,* 96 N.M. 155, 241, 629 P.2d 231, 317 (1980) (trial courts must "unhesitatingly impose sanctions proportionate to the circumstances" to assure effective discovery), *cert. denied,* 451 U.S. 901, 101 S.Ct. 1966, 68 L.Ed.2d 289 (1981). The court may award civil contempt sanctions even when the underlying claim is dismissed. *See Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 395, 110 S.Ct. 2447, 2455, 110 L.Ed.2d 359 (1990). An award of civil contempt sanctions attempts to "compensate the complainant for losses sustained." *State ex rel. Apodaca v. Our Chapel of Memories of New Mexico, Inc.,* 74 N.M. 201, 204, 392 P.2d 347, 349 (1964).

In awarding sanctions, the court must "insure that a determination of a case on the merits is made only after a full, good faith disclosure of all relevant facts" in order "to preserve the integrity of the judicial process." *Id.* "[C]ourts have supervisory control over their dockets and inherent power to manage their own affairs so as to achieve the

orderly and expeditious disposition of cases. The trial judge has such inherent supervisory control that he [or she] can initiate proceedings under Rule 37." *Pizza Hut of Santa Fe, Inc. v. Branch,* 89 N.M. 325, 327, 552 P.2d 227, 229 (Ct.App.1976). In *Chambers v. NASCO, Inc.,* 501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991), the United States Supreme Court stated that the court's inherent powers are governed not by rules or statutes but by the control necessarily vested in courts to manage their own affairs in order to achieve the orderly and expeditious disposition of cases. *Id.* at 49, 111 S.Ct. at 2135 (quoting *Link v. Wabash R.R.,* 370 U.S. 626, 630–32, 82 S.Ct. 1386, 1388–89, 8 L.Ed.2d 734 (1962)). *Chambers* recommended that the court follow the statutes and rules when they are applicable, but when "in the informed discretion of the court, neither the statute nor the rules are up to the task, the court may safely rely on its inherent power." *Id.* at 50, 111 S.Ct. at 2135.

The information presented during trial for consideration in awarding punitive damages concerned Appellant's failure to remove the Style 10 IOL from the market and Appellant's failure to warn Appellees or their physicians of the risks involved in using this product. The court recognized that

the jury did not have a complete record— and I'm not sure to this day we have a complete record of what existed in Surgidev's files or what was available to them for them to be able to reasonably conclude that there was a danger in the application and use of their Style 10 lens in certain kinds of medical procedure[s] that would have prompted a reasonable company to have withdrawn that product from the market at the time the lens was installed in the eye[s] of these two men here in Taos County by Dr. Morrison[. T]he jury found that there was enough evidence that Surgidev knew or should have known of those dangers and knew or should have communicated that information to doctors like Dr. Morrison, and, based upon those concerns, the jury found a punitive damage award against Surgidev corporation in this case.

It is irrelevant that the court noted that the jury awarded significant punitive damages in part because it sensed Appellant's recalcitrance in providing discovery. As the court stated, the jury responded to

a real bad smell about what was going on. But that's all it was. Until Mr. Jaeger came out with his information, it just smelled bad. But when he came out with his information what was clear was this was going beyond stinky. This was a flagrant violation of orders of discovery.

Therefore, because the concrete factual information available to the court and the jury at the time of trial did not support sanctions, sanctions could not have been included in the award of punitive damages.

However, even had Mason's testimony been sufficient to sustain sanctions during *Surgidev I,* the sanctions would not have been subsumed by the award of punitive damages. Punitive damages concern Appellant's misconduct towards the injured party and are noncompensatory. *See Powell,* 114 N.M. at 400, 839 P.2d at 144. Civil sanctions, on the other hand, concern Appellant's misconduct towards the tribunal and are compensatory. *See Our Chapel of Memories,* 74 N.M. at 204, 392 P.2d at 349. The court's award of sanctions against Appellant was predicated on Appellant's "pattern and practice of willful failures of discovery." We find that the award of sanctions does not duplicate the award for punitive damages.

**B**

Appellant next contends that under SCRA 1–037, the court is limited to imposing sanctions to those cases *"in which the action is pending"* before the court. *See* SCRA 1–037(B)(2), (D)(3). This is predicated on the right of the parties to a lawsuit to be assured of finality at some point after the judgment is entered. Once final judgment is entered, Appellant asserts, the district court loses jurisdiction and without jurisdiction, may not order sanctions. We disagree that the court loses jurisdiction to order sanctions once the judgment is accepted on appeal or the case is no longer before the court.

We recognize the long-standing rule that a district court loses its jurisdiction "upon the filing of the notice of appeal." *Kelly Inn No.*

*102, Inc. v. Kapnison,* 113 N.M. 231, 241, 824 P.2d 1033, 1043 (1992) (quoting *Wagner Land & Inv. Co. v. Halderman,* 83 N.M. 628, 630, 495 P.2d 1075, 1077 (1972)). However, this is not "an inflexible law of nature" but a "pragmatic guideline enabling trial courts to determine when to proceed further with some part of a case and when to refrain because issues already resolved are under consideration by an appellate court." *Id.* As we indicated in *Kelly Inn,* a district court does not lose "jurisdiction to take further action when the action *will not affect the judgment on appeal* and when, instead, the further action enables the trial court to carry out or enforce the judgment." *Id.*

The district court retains jurisdiction to consider "a motion to enter a deficiency judgment" even though an "appeal [is pending] from a judgment adjudicating defendants' indebtedness, foreclosing a lien, and directing judicial sale of the property subject to the lien." *Id.* at 242, 824 P.2d at 1044. The district court may also enforce a declaratory judgment by awarding supplemental relief under NMSA 1978, Section 44–6–9, while an appeal is pending. *Kelly Inn,* 113 N.M. at 242, 824 P.2d at 1044. Likewise, under NMSA 1978, Section 39–3–22 (Repl.Pamp. 1991), the court may fix the amount of a supersedeas bond and, under SCRA 1–062, the court may rule on a motion for a stay of execution of a judgment. *Kelly Inn,* 113 N.M. at 242, 824 P.2d at 1044. Thus, a district court does not lose its jurisdiction over collateral matters merely because the judgment is on appeal. The purpose of divesting a district court of jurisdiction while a judgment is on appeal is to "avoid the confusion and waste of time that might flow from putting the same issues before two courts at the same time." *Terket v. Lund,* 623 F.2d 29, 33 (7th Cir.1980) (quoting 9 Jeremy C. Moore et al., *Moore's Federal Practice* ¶ 203.11 & n. 1 (2d ed. 1980)); *quoted in Kelly Inn,* 113 N.M. at 242, 824 P.2d at 1044.

"Finality" is not a technical term but rather a term requiring practical "construction to satisfy the policies of facilitating meaningful appellate review and of achieving judicial efficiency." *Trujillo v. Hilton of Santa Fe,* 115 N.M. 397, 398, 851 P.2d 1064, 1065 (1993);

*accord State ex rel. State Engineer v. Parker Townsend Ranch Co.,* 118 N.M. 780, 781, 887 P.2d 1247, 1248 (1994). "Issues 'collateral to' and 'separate from' the decision on the merits [may] fall within a twilight zone of similarity to proceedings that carry out or give effect to the judgment." *Trujillo,* 115 N.M. at 398, 851 P.2d at 1065.

However, sanctions clearly are collateral to or separate from the decision on the merits and fall outside the construct of "finality." *See Cooter & Gell,* 496 U.S. at 395, 110 S.Ct. at 2455, 110 L.Ed.2d 359 (1990) (court may impose contempt sanctions even though underlying action dismissed). The purposes of sanctions are "(1) to enable a party to obtain the discovery to which it is entitled; (2) to compensate a party for expenses incurred because of violation of the discovery rules by another party; and (3) to deter infractions of the rules and of court orders enforcing them." *Sandoval v. Martinez,* 109 N.M. 5, 9, 780 P.2d 1152, 1156 (Ct.App.1989); *Chambers,* 501 U.S. at 46, 111 S.Ct. at 2133 (sanctions serve dual purpose of vindicating judicial authority and making prevailing party whole for expenses incurred by opponent's obstinacy (quoting *Hutto v. Finney,* 437 U.S. 678, 689 n. 14, 98 S.Ct. 2565, 2572 n. 14, 57 L.Ed.2d 522 (1978))).

If a party unearths discovery abuses during the trial, the district court may award sanctions under SCRA 1–037, unless the abuse falls outside this rule. In such a case, the court may rely on its inherent powers. *See Chambers,* 501 U.S. at 50, 111 S.Ct. at 2135. When the case is pending before the appellate court or has concluded, then the district court has inherent authority to address a matter extrinsic and collateral to the trial on the merits, namely, whether a party abused the discovery process.

In *Willy v. Coastal Corp.,* 503 U.S. 131, 112 S.Ct. 1076, 117 L.Ed.2d 280 (1992), the United States Supreme Court determined that the lack of subject matter jurisdiction in a federal court does not preclude sanctions under Fed.R.Civ.P. 11 (providing for sanctions if the signature on a pleading, motion, or paper is improper), because the sanctions are not based on the merits of a "case or

controversy" over which the court lacked jurisdiction. *Id.* at 138, 112 S.Ct. at 1080. Likewise, the Court found jurisdiction to impose Rule 11 sanctions even after the plaintiff filed a notice of dismissal. The Court noted that "[i]t is well established that a federal court may consider collateral issues after an action is no longer pending.... Thus, even 'years after the entry of a judgment on the merits' a federal court could consider an award of counsel fees." *Cooter & Gell,* 496 U.S. at 395, 110 S.Ct. at 2455 (quoting *White v. New Hampshire Dep't of Employment Sec.,* 455 U.S. 445, 451 n. 13, 102 S.Ct. 1162, 1166 n. 13, 71 L.Ed.2d 325 (1982)). Similarly, when one party frustrated the other party's attempts to discover facts that would establish personal jurisdiction, the Court adopted, under Fed.R.Civ.P. 37(b)(2)(A), the sanction of certifying those facts as true. *See Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 709, 102 S.Ct. 2099, 2107, 72 L.Ed.2d 492 (1982). This inherent power is necessary to protect a party's "right to a fair trial on the merits [and] the integrity of the orders of the court." *United Nuclear,* 96 N.M. at 241, 629 P.2d at 317.

Appellant argues that permitting a party to bring sanctions after the final judgment precludes finality. However, we note that NMSA 1978, Section 37–1–2 (Repl. Pamp.1990), permits actions founded on a judgment to be brought up to fourteen years after entry of the judgment. A court would undoubtedly have at least the same time period to impose sanctions upon finding an abuse of the discovery process.

Moreover, when we determine that we have rendered a judgment based on extrinsic or collateral fraud, we have always held that the court has inherent power to vacate a final judgment under its powers of equity. *See Hudson v. Herschbach Drilling Co.,* 46 N.M. 330, 332–33, 128 P.2d 1044, 1045 (1942). We have set no time limit on this power. In *Moya v. Catholic Archdiocese,* we vacated a 1978 judgment following a deposition taken eight years later in 1986. 107 N.M. 245, 247, 755 P.2d 583, 585 (1988). We vacated the judgment upon finding "not mere perjury but

a deliberate scheme to defraud the court." *Id.*

We agree with Appellant that the court did not specifically find fraud on the court. However, fraud on the court is not the only circumstance in which sanctions may be awarded. We note that an abuse of the discovery process affects more than private litigants. It also affects the integrity of the court and, when left unchecked, would encourage future abuses. "Discovery for all parties will not be effective unless trial courts do not countenance violations, and unhesitatingly impose sanctions proportionate to the circumstances." *United Nuclear,* 96 N.M. at 241, 629 P.2d at 317. Furthermore, we would undoubtedly find the concealment of documents under the rubric of the attorney-client privilege when that privilege clearly did not exist to constitute a "deliberately planned and carefully executed scheme." *Moya,* 107 N.M. at 250, 755 P.2d at 588.

Although we do not set a time bar to bringing sanctions against a party who has abused the discovery process, we recognize equitable defenses may preclude a party's right to raise a claim. *See Morris v. Ross,* 58 N.M. 379, 381, 271 P.2d 823, 824 (1954). However, because Appellant has not raised an equitable defense, we need not address this issue.

■ Because the award of sanctions is not an action on the judgment, the court is not limited by the statutory bar of fourteen years. We hold that a party may be held accountable for an abuse of the discovery process under the court's inherent powers to impose sanctions at any time, subject to constitutional limitations or equitable defenses.

## III

■ We now address whether the trial court abused its discretion in awarding sanctions in the present case. We will find an abuse of discretion when the court's decision is "without logic or reason, or ... clearly unable to be defended." *Newsome v. Farer,* 103 N.M. 415, 420, 708 P.2d 327, 332 (1985); *accord Lowery v. Atterbury,* 113 N.M. 71, 74, 823 P.2d 313, 316 (1992).

Appellant argues that an award of severe sanctions requires a finding by clear evidence of bad faith or willfulness. Appellant misstates the standard. Due process requires a clear showing of willfulness when the sanction imposed is "more stern than reasonably necessary." *United Nuclear,* 96 N.M. at 241, 629 P.2d at 317 (quoting *DiGregorio v. First Rediscount Corp.,* 506 F.2d 781, 789 (3d Cir. 1974)). The court may only impose the sanction of *dismissal* for failure to comply with a court order "when the failure to comply is due to the willfulness, bad faith or fault of the disobedient party." *Id.* at 202, 629 P.2d at 278 (citing *Societe Internationale v. Rogers,* 357 U.S. 197, 212, 78 S.Ct. 1087, 1095, 2 L.Ed.2d 1255 (1958)). The test for willfulness is a "conscious or intentional failure to comply." Willfulness is "distinguished from accidental or involuntary non-compliance" and may be established even where there is "no wrongful intent." *Brookdale Mill, Inc. v. Rowley,* 218 F.2d 728, 729 (6th Cir.1954); *quoted in United Nuclear,* 96 N.M. at 202, 629 P.2d at 278.

We need not reach the question of whether Jaeger's deposition and the deposition of Appellant's president, Grendahl, with its attached documentation provided clear evidence of Appellant's willful dilatory tactics. The imposition of attorney's fees and expenses is a lesser sanction than "outright dismissal of a lawsuit." *Chambers,* 501 U.S. at 45, 111 S.Ct. at 2133. The court did not impose sanctions "more stern than reasonably necessary." *United Nuclear,* 96 N.M. at 241, 629 P.2d at 317 (quoting *DiGregorio,* 506 F.2d at 789). Nor was Appellant denied the "right to a fair trial on the merits." *Id.*

 "[T]he choice of sanctions . . . lies within the sound discretion of the trial court." *Id.* at 239, 629 P.2d at 315. The court need not exhaust all lesser sanctions, although "meaningful alternatives" must be "reasonably explored" before the sanction of dismissal is granted. *Newsome,* 103 N.M. at 421, 708 P.2d at 333 (quoting *Von Poppenheim v. Portland Boxing & Wrestling Comm'n,* 442 F.2d 1047, 1054 (9th Cir.1971), *cert. denied,* 404 U.S. 1039, 92 S.Ct. 715, 30 L.Ed.2d 731 (1972)). Where a lesser sanction is granted, we defer to the trial court's decision absent an abuse of discretion. *United Nuclear,* 96 N.M. at 239, 629 P.2d at 315. On review, we consider the full record to determine whether there was substantial evidence to support the court's award for monetary sanctions against Appellant based on an abuse of the discovery process. *See id.* at 203, 625 P.2d at 279.

The district court stated in its Findings of Fact that Appellant gave false answers to interrogatories by denying knowledge of any criticism of the Style 10 IOL. The court based its finding on the fact that Appellant actually had ongoing contact with Drs. Apple and Clayman who criticized the Style 10 IOL. The court found Appellant willfully and intentionally withheld a video prepared for a seminar by Dr. Clayman that criticized the Style 10 IOL. In addition to the failure to fully answer interrogatories, the court found that Appellant intentionally withheld documents reasonably requested during discovery, such as internal memoranda, sales memoranda, target reports, FDA inspection reports, records, and demonstrative evidence relating to attendance at medical meetings. The internal memoranda to the sales force suggested strategies that could be used in countering the criticism of the Style 10 IOL and encouraged the sales force to push sales despite the known dangers. The court also found that Appellant provided false and misleading answers to interrogatories, specifically concerning the FDA inspection held in March 1988 that applied pressure on Appellant to remove the Style 10 IOL from the market. Finally, the court found "credible testimony" that "relevant and material documents and demonstrative evidence" were not produced in this case although properly requested and subject to production.

The court found that it was "eminently clear" that Appellant was "stonewalling to the maximum" during the course of this case. Appellant "would not produce anything unless it were by the kicking and screaming of the [Appellees] in this case, and the insistence that it be [produced]." This pattern of behavior went on through the entire case. The court noted that numerous times Appellant said,

"We don't have it," and then when it would show up later on they would say, "Well, here's part of it," and finally having to produce what now appears to be only a portion of the documents available to them, representing every time, "This is all we have, Judge. This is all we have got." We agree with the court that, "[w]hen a company chooses ... to not produce, to destroy and to do everything in its power to make sure that the other side does not get what they have a legitimate right to receive under the rules of discovery, then the Court itself feels that it must protect the process of production of documents."

Moreover, the court found Jaeger credible when he testified that Appellant's counsel admitted knowing that the documents were "potentially relevant to product liability litigation" and expressed an intention to destroy them. Therefore, the court determined that Appellant "willfully and intentionally failed to comply with [Appellees'] discovery requests repeatedly throughout this litigation"; "misrepresented material facts to this court"; was not credible; "willfully and intentionally violated discovery rules"; "willfully and intentionally violated court orders in regard to discovery"; "willfully and intentionally [gave] false answers to interrogatories and in testimony"; "willfully, intentionally, and systematically withheld damaging evidence"; and demonstrated "a pattern of abuse of the judicial system and interference with the administration of justice." Based on these findings of fact, the court awarded monetary sanctions.

Appellant argues that "[t]here is a fundamental dispute between Mr. Jaeger's deposition testimony and the affidavits of Mr. Grendahl and Mr. Dittrich[, the attorney who replaced Jaeger as counsel for Appellant], as to whether Surgidev had knowledge that Mr. Jaeger was still in possession of Surgidev files." We note from Mr. Grendahl's deposition, however, that he was aware that Appellant was paying Jaeger about $300 per month to store files and that Appellant retrieved the material two weeks after the conclusion of the trial. Although it is reasonable that Appellant did not know specifically what was contained in the 300 boxes of material stored

with Jaeger, it would take a stretch of the imagination to believe Appellant "suddenly discovered" this material only upon the conclusion of the trial. Likewise, it is hard to imagine that Appellant would not have retrieved this information immediately had it consisted of beneficial rather than damaging material. Clearly, Appellant knew Jaeger was storing material and, therefore, was under an obligation to make a good faith effort to turn over relevant or potentially relevant material upon a valid request. *See United Nuclear*, 96 N.M. at 225, 629 P.2d at 301 (discussing lack of good faith response to discovery obligations under court's rules and orders).

Appellant also contends that the court only found "that it was 'probable' that damaging evidence was not produced and destroyed by [Appellant]." Appellant points out that Jaeger did not know the contents of the material he was storing; nor did he know, when Appellant's counsel made the "deep-six" comment, which specific materials were intended for destruction. Appellant argues that its counsel could have been referring to duplicate documents. Furthermore, because Jaeger's testimony was not based on first-hand knowledge, it was not credible. The question of credibility is appropriately resolved by the fact-finder and we will not reverse absent an abuse of discretion. *See Newsome*, 103 N.M. at 420, 708 P.2d at 332. We find no abuse of discretion.

Finally, Appellant argues that the documents attached to Grendahl's deposition were never authenticated, were "not part of this appellate record, and therefore [are] of no assistance" to prove that Appellant possessed these documents, that Appellant knew it had them, or that Appellant intentionally withheld them. We disagree. Grendahl produced the documents at a deposition taken in preparation for a lawsuit filed in New Jersey. Our concern is whether the documents existed when Appellant told Appellees in response to proper discovery requests that they did not. The fact that Appellant produced them under a deposition lends sufficient credibility for the purpose of sanctions. Appellant appears to be arguing that we should find its own sworn statement not credible. The rele-

vance and authenticity of the documents are issues that would have been resolved in *Surgidev I* had they been properly produced.

Considering Appellant's general recalcitrance to cooperate in the discovery process throughout the entire trial and its willful withholding of information properly requested, we find the court's decision is not "without logic or reason, or ... clearly unable to be defended." *Id.* at 420, 708 P.2d at 332. Therefore, we find no abuse of discretion in imposing monetary sanctions. The court awarded $100,000 to cover the expense of obtaining "those things that just simply should have been provided [that Appellees were forced] to go chase down as hard as they could and ask for the protection of the Court," and $51,000 for attorney's fees, costs, and expenses.

## IV

In conclusion, we find SCRA 1–060 is not implicated when an award for sanctions concerns a collateral matter, namely, an abuse of the discovery process. Likewise, the statutory limitation of fourteen years on actions concerning a judgment is not applicable in an award of sanctions. Furthermore, we find an award of sanctions is authorized both under SCRA 1–037 and the court's inherent power and may be brought against a party for abuse of the judicial process at any time, subject to constitutional limitations or equitable defenses. We affirm.

IT IS SO ORDERED.

RANSOM and FROST, JJ., concur.