8 P.3d 1058 (2000)
STATE of Washington, Respondent,
v.
S.H., D.O.B. 03-03-84, Defendant,
Public Defender Association, Appellant.
Nos. 41635-9-I, 41636-7-I.
Court of Appeals of Washington, Division 1.
September 5, 2000.
*1059 Robert Charles Boruchowitz & Neil Fox, King County Public Defender Ofc., Seattle, for Appellant.
Jim Whisman, Deputy King County Prosecutor, Seattle, for Respondent.
KENNEDY, J.
Seattle-King County Public Defender Association (PDA) appeals the juvenile court judge's order assessing a $50 sanction against it for failing to enter into a diversion agreement "as expeditiously as possible" as required by RCW 13.40.080(1). A trial court has the inherent authority to assess sanctions against attorneys for abusive litigation conduct if it finds bad faith. Although the record here might support such a finding, the trial judge did not make an express finding of bad faith. Accordingly, the basis for the imposition of sanctions is not clear. We remand for entry of express findings on whether PDA acted in bad faith.

FACTS
On July 30, 1997, the State charged Juvenile S.H. with two counts of fourth degree assault. And on August 25, 1997, the State charged her with one additional count of fourth degree assault. PDA was appointed to represent S.H. in both matters. PDA attorney Jennifer Horowitz represented S.H. at case-setting on September 10, 1997. On October 20, 1997, PDA attorney Daniel Gross assumed Horowitz's caseload.
At the fact-finding hearing on October 24, 1997which was the expiration of S.H.'s speedy adjudication periodGross moved for a diversion agreement under RCW 13.40.080, whereby S.H.who had no criminal historyagreed to fulfill certain conditions in lieu of prosecution. The State did not oppose diversion, but asked the juvenile court judge to sanction PDA for waiting until the day of the fact-finding hearing to bring the motion because "a great deal of State resources were expended preparing for this trial." Report of Proceedings at 10. Gross acknowledged that the timing of the motion was unusual:
I should just note that I did just take this case over this week from the previous attorney, Ms. Horowitz. In the notes which she presented to me, she did indicate to me that that was an option which she had discussed with [S.H.] and was considering doing, in terms of doing it the day of trial, though that was at least somewhat unusual. *1060 Id. at 1. Gross explained that, according to the notes he was given, S.H. did not agree to diversion at case-setting because "she simply wanted to expedite the matter[.]" Id. at 13. Gross further stated that he was unable to reach S.H. until the morning of the fact-finding hearing.
The prosecutor at the fact-finding hearing noted that "it appears from the [previous] prosecutor['s] ... notations ... [that] diversion was definitely discussed, and looked into as a possibility, but then rejected by [S.H.]." Report of Proceedings at 9-10. Nonetheless, at the hearing, Gross and S.H. had a discussion and then Gross stated: "[S.H.] is indicating to me that she didn't specifically hear about diversion before." Id. at 13. Gross then acknowledged, "it could be that the full details were not discussed at that time ... I'm not certain how much detail was gone into as exactly what was involved with diversion or not." Id.
The judge accepted the diversion agreement and imposed a $50 sanction against PDA "for bringing the [diversion] motion on the day of trial with several State's witnesses present[.]" Id. at 21. She recognized that this amount would not cover the State's costs, but opined that it was a fair amount under the circumstances. The judge then admonished PDA: "I don't want this to become a way that the defense counsel operate." Id. at 15.
On November 17, 1997, PDA moved the court to reconsider, contending that "[t]here is no authority for the imposition of costs or terms." Clerk's Papers (No. 41635-9-I) at 9. Attached to this motion was Gross's declaration, averring that on the morning of October 24, 1997the day of S.H.'s fact-finding hearing S.H. told him over the telephone that "she wished to take the plea deal rather than diversion and that she really did not wish to go to trial." Id. at 12. Then, according to Gross's declaration, "minutes before appearing in court, after [he] spoke with [S.H.] again, [she] indicated that she wished to ask for diversion, and if that was not granted, she would take the cases to trial." Id. at 13.
At oral argument on the motion to reconsider, the judge clarified that she assessed terms for "the normal costs that [are] associated with bringing witnesses to court for a request for diversion." Report of Proceedings at 24. She explained that she "did not assess monetary sanctions against Mr. Gross because [S.H.] failed to accept diversion at cases setting and set a fact finding date." Id. And the judge further explained why the sanctions were appropriate:
[I]t didn't appear to me that [Gross] had been on the case long enough to have had even the understanding from him [sic] of what was going on andand frankly wasn't so much directed at Mr. Gross, as it was there had been representation longer than that, and certainly Ms. Horowitz or someone else [who] was on board back at case setting.
....
It appeared to me to be an appropriate sanction so that we would not be faced with a developing process of having the State bring in witnesses and at the last minute be faced with this particular fact pattern, where a child says, nownow, I want a diversion.
Id. at 29.
In a written order, the judge denied PDA's motion for reconsideration, citing RCW 2.28.010 and RCW 2.28.150. PDA appeals.

DISCUSSION
PDA maintains that the judge did not have the authority to sanction it for waiting to enter into a diversion agreement until the day of its juvenile client's fact-finding hearing. We disagree.

I. Authority to Sanction
"Every court of justice has power... [t]o enforce order in the proceedings before it, ... [and][t]o provide for the orderly conduct of proceedings before it[.]" RCW 2.28.010(2)-(3). "When jurisdiction is ... conferred on a court or judicial officer all the means to carry it into effect are also given[.]" RCW 2.28.150. Where sanctions are not expressly authorized, "the trial court is not powerless to fashion and impose appropriate sanctions under its inherent authority to control litigation." In re Firestorm 1991, 129 *1061 Wash.2d 130, 139, 916 P.2d 411 (1996) (applying the principles embodied in CR 11, CR 26(g), and CR 37 to CR 26(b) violations). "[D]ecisions either denying or granting sanctions... are generally reviewed for abuse of discretion." Physicians Ins. Exch. & Ass'n v. Fisons Corp., 122 Wash.2d 299, 338, 858 P.2d 1054 (1993). But the "choice of sanctions remains subject to review under the court's inherent authority applying the arbitrary, capricious, or contrary to law standard of review." Butler v. Lamont Sch. Dist., 49 Wash.App. 709, 712, 745 P.2d 1308 (1987).
In Wilson v. Henkle, 45 Wash.App. 162, 174, 724 P.2d 1069 (1986), this court explained that federal Rule 11 permits a court to award expenses to a litigant whose opponent acts in bad faith. It then noted that Washington's CR 11 incorporates essentially the same language as its federal counterpart. Id.; see CR 11; JuCR 1.4(a) (incorporating Superior Court Civil Rules in juvenile proceedings). The court stated that such a sanction is within the scope of a court's authority: "A Washington court has the inherent power to assess the litigation expenses, including attorney fees, against an attorney for bad faith litigation conduct." Wilson, 45 Wash.App. at 174-75, 724 P.2d 1069 (citing Roadway Express, Inc. v. Piper, 447 U.S. 752, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980)).
The Wilson court acknowledged that the trial court has "the inherent power to impose sanctions against an attorney for inappropriate and improper conduct." Wilson, 45 Wash.App. at 173, 724 P.2d 1069. It then discussed federal Rule 11 and CR 11, noting that both rules were amended to permit a court to award attorney fees for bad faith litigation. Id. at 173-74, 724 P.2d 1069. Without specifying a pleading, motion, or legal memorandum that was in violation of CR 11, the court concludedapparently under the court's inherent authority that the sanctions imposed by the trial court were appropriate. Id.; see CR 11 (authorizing sanctions for a pleading, motion, or legal memorandum that is not well grounded in fact and warranted by existing law); see also Jemison v. National Baptist Convention USA, Inc., 720 A.2d 275, 287 (D.C.1998) ("[A] court may nevertheless impose sanctions (albeit not under Rule 11) when it finds that the attorney or the party has engaged in bad faith litigation[.]").
Although no Washington case has expressly held that a finding of bad faith is required before a court may invoke its inherent authority to sanction litigation conduct, the Wilson court cited a U.S. Supreme Court case that set forth such a requirement: "[A] specific finding as to whether counsel's conduct... constituted or was tantamount to bad faith ... [has] to precede any sanction under the court's inherent powers." Roadway Express, 447 U.S. at 767, 100 S.Ct. 2455, cited in Wilson, 45 Wash.App. at 175, 724 P.2d 1069; see also Goldin v. Bartholow, 166 F.3d 710, 722 (5th Cir.1999) ("The imposition of sanctions using inherent powers must be accompanied by a specific finding of bad faith."); DLC Management Corp. v. Hyde Park, 163 F.3d 124, 136 (2d Cir.1998) (same); In re Keegan Management Co., 78 F.3d 431, 436 (9th Cir.1996) (same). The Ninth Circuit "insist[s] on the finding of bad faith because it ensures that restraint is properly exercised,... and it preserves a balance between protecting the court's integrity and encouraging meritorious arguments." Primus Automotive Fin. Servs., Inc. v. Batarse, 115 F.3d 644, 649 (9th Cir.1997) (internal quotation marks and citation omitted).
Following Wilson and case law from other jurisdictions, we hold that a trial court's inherent authority to sanction litigation conduct is properly invoked upon a finding of bad faith. A party may demonstrate bad faith by, inter alia, delaying or disrupting litigation. Chambers v. NASCO, Inc., 501 U.S. 32, 46, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991). The court's inherent power to sanction is "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." Id. at 43, 111 S.Ct. 2123 (citation omitted). Sanctions may be appropriate if an act affects "the integrity of the court and, [if] left unchecked, would encourage future abuses." Gonzales v. Surgidev, 120 N.M. 151, 899 P.2d 594, 600 (1995); see also Chambers, 501 U.S. at 46, 111 S.Ct. 2123 (explaining that sanctions are appropriate if *1062 the "very temple of justice has been defiled" by the sanctioned party's conduct); Goldin, 166 F.3d at 723 (same).
This court has held that a finding of "inappropriate and improper" is tantamount to a finding of bad faith. Wilson, 45 Wash. App. at 175, 724 P.2d 1069; see also DLC Management, 163 F.3d at 136 (concluding that trial court's finding that defendants acted in conscious disregard of their discovery obligations was "sufficiently concise and based on clear evidence" so as to amount to the bad faith sufficient to support sanctions under the court's inherent authority.). Nonetheless, if the trial court fails to enter a finding that amounts to bad faith, remand is required. Primus, 115 F.3d at 649; but cf. Optyl Eyewear Fashion Int'l Corp. v. Style Cos., Ltd., 760 F.2d 1045, 1051 (9th Cir.1985) (concluding that remand was not necessary for explicit bad faith finding under 28 U.S.C.A. § 1927 (1994) where the record was "replete with evidence of tactical maneuvers undertaken in bad faith.").

II. Diversion
"Where a case is legally sufficient the prosecutor shall divert the case if the alleged offense is a misdemeanor or gross misdemeanor or violation and the alleged offense is the offender's first offense or violation." RCW 13.40.070(6). "A diversion agreement shall be a contract between a juvenile accused of an offense and a diversionary unit whereby the juvenile agrees to fulfill certain conditions in lieu of prosecution." RCW 13.40.080(1). The juvenile retains the right to be referred to the juvenile court (for prosecution) at any time before the diversion agreement is filed. RCW 13.40.080(5). But the diversion unit has the authority to refuse to enter into a diversion contract. See State v. Chatham, 28 Wash. App. 580, 583, 624 P.2d 1180 (1981). If either the juvenile or the unit declines to participate in diversion, the case goes to prosecution.
"The right to counsel shall inure prior to the initial interview for purposes of advising the juvenile as to whether he or she desires to participate in the diversion process or to appear in the juvenile court." RCW 13.40.080(10). "A juvenile alleged to have committed an offense for which an adult could be confined shall be given a copy of a[n advice about diversion] statement [that] ... shall be read by, or read to, the juvenile before the juvenile signs the statement." JuCR 6.4(a). Diversion "agreements shall be entered into as expeditiously as possible." RCW 13.40.080(1).
In State v. Quiroz, 107 Wash.2d, 791, 794, 733 P.2d 963 (1987), our Supreme Court noted that the more informal diversion process is faster than court proceedings and keeps offenders out of institutions and in the community where the resources to deal with their behavior are better suited to their age. The court stated further that the court rules it promulgated to control the procedure that the diversion unit and the juvenile must follow in order to enter into a diversion agreement are "designed to protect the juvenile's constitutional and statutory rights while at the same time ensuring that the system functions efficiently and without the delays associated with formal hearings." Id. at 794, 733 P.2d 963. Thus, the whole process of diversion is designed to deflect a whole class of offenders out of the formal prosecution system and into diversion if the juvenile so desires.
From the record, it is unclear whether HorowitzS.H.'s first attorney from PDAfully advised S.H. about the diversion option before case-setting as required by RCW 13.40.080(10). At the fact-finding hearing, the prosecutor and Gross averred that Horowitz had discussed diversion with S.H., albeit possibly not in sufficient detail. Horowitz was not present at the fact-finding hearing or the motion to reconsider. And the record contains no declaration from her. At the fact-finding hearing, Gross acknowledged that moving for diversion on the day of the hearing is unusual. Because Gross maintained that he was unable to reach S.H. until the morning of the fact-finding hearing, his knowledge of the case came solely from Horowitz's file. Gross explained that, according to the notes he was given, S.H. did not agree to diversion at case-setting because "she simply wanted to expedite the matter[.]" *1063 Report of Proceedings at 13. Gross and S.H. appeared at the fact-finding hearing and then sought to enter into the diversion agreement.
We reject PDA's argument that a juvenile has every right to demand diversion right up to the time of the fact-finding hearing. Put another way, a juvenile does not have a right to wait and see whether the witnesses show up before deciding whether to accept diversion. The case has to be referred for diversion, and if the juvenile does not agree, the State must prosecute the case.
Because the diversion statute directs that the diversion decision be made "as expeditiously as possible," RCW 13.40.080(10), and because the statute and court rules provide that the juvenile has a right to appointed counsel to help him or her make the decision of whether to enter into a diversion agreement, the judge's frustration is understandable. The already overburdened juvenile system in King County was put to needless utilization of resourcesa judge, a prosecutor, several witnesses, appointed counsel, a probation officerall of these people were called to court at considerable expense for a case that should have been promptly diverted if it was going to be diverted at all. Diversion is supposed to be in lieu of prosecution, not an option after the case is called for trial. Although a juvenile does not automatically lose his or her right to enter into diversion after initially rejecting it, the juvenile's attorneys' possible failure to try to expedite that decision may be grounds for sanctions.
Where, as here, the diversion decision is not made "as expeditiously as possible" as required by RCW 13.40.080(1), the aims of judicial economy that are part of the underlying rationale for the diversion process become frustrated and the "orderly and expeditious disposition of cases" become disrupted. See Chambers, 501 U.S. at 43, 111 S.Ct. 2123. The judge sanctioned PDA $50, an amount that she acknowledged was less than the costs incurred by the State, to discourage future abuses. See Report of Proceedings at 15 ("I don't want this to become a way that the defense counsel operate."); id. at 29 ("It ... [is] an appropriate sanction so that we would not be faced with a developing process of having the State bring in witnesses and at the last minute be faced with this particular fact pattern[.]"). A court has the inherent authority to provide for the orderly conduct of proceedings before it. RCW 2.28.010, -.150. And sanctions may be appropriate where, as here, an actif left uncheckedwould encourage future abuses. See Gonzales, 899 P.2d at 600.
Although we have granted the PDA's Motion for reconsideration in part, we reject PDA's argument that RPC 3.1 requires a stronger showing of bad faith litigation conduct in criminal cases than in civil cases. RPC 3.1 provides:
A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law. A lawyer for the defendant in a criminal proceeding, or the respondent in a proceeding that could result in incarceration, may nevertheless so defend the proceeding as to require that every element of the case be established.
A lawyer for a party in a proceeding that could result in incarceration may certainly defend his or her client so as to require the State to prove every element of the case to be established. But this is not to say that defense counsel may advance frivolous arguments or otherwise unduly delay proceedings. See In re Lord, 123 Wash.2d 296, 302, 314, 868 P.2d 835 (1994) (applying RPC 3.1 in a capital appeal, in noting that defense counsel had been dilatory for failing to separate frivolous from meritorious claims).
The record supports the inference that the judge deemed PDA's conduct to be inappropriate and improper, which is tantamount to a finding of bad faith. See Wilson, 45 Wash. App. at 175, 724 P.2d 1069. Nonetheless, in the absence of an express finding, we will not assume that the judge found bad faith, even where the record would support such a finding, if made. See Primus, 115 F.3d at 649. Accordingly, we remand to the juvenile court *1064 judge to enter express findings on whether PDA acted in bad faith.
The court may, in its discretion, take additional evidence in the form of a declaration from attorney Horowitz, or proceed on the record as now constituted. In either event, this opinion terminates our review of the instant matter.
BECKER, A.C.J., and WEBSTER, J., concur.