# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| WILLIAM HUBBARD and KATHY WILCOX, husband and wife, | No. 59913-9-II |
| Appellants, | |
| v. | |
| BRADLEY JOHNSON and CINDY JOHNSON, husband and wife, | UNPUBLISHED OPINION |
| Respondents. | |

GLASGOW, J.—William Hubbard and Kathy Wilcox purchased a piece of land next to a property owned by Cindy and Bradley Johnson. A 2003 survey established a boundary running between the two properties, and a wooden fence extended along most of this boundary except for about 20 feet at the northern end. In 2016, another survey showed that the northern point of the boundary line was actually about four feet to the east of the line established by the 2003 survey, cutting into what the parties thought was Hubbard and Wilcox's property.

Hubbard and Wilcox filed a complaint seeking adverse possession of the land between the 2003 and 2016 survey boundaries on their side of the fence, which the Johnsons conceded. Hubbard and Wilcox then brought a summary judgment motion claiming adverse possession of the nonfenced area between the survey boundaries to the north of the fence.

The trial court denied Hubbard and Wilcox's summary judgment motion without prejudice because their complaint only included a claim for the *fenced* area between the survey boundaries. Hubbard and Wilcox moved for reconsideration of the trial court's summary judgment denial, restating that their complaint contained a claim for the nonfenced area. The trial court denied the

motion for reconsideration and imposed joint and several sanctions against Hubbard, Wilcox, and their attorney for making continued misrepresentations about what was in the complaint.

Hubbard and Wilcox appeal the award of sanctions and make several procedural arguments about why the trial court should have granted their motion for reconsideration. We hold that the trial court did not abuse its discretion by imposing sanctions against Hubbard and Wilcox for misrepresenting the contents of the complaint again. Accordingly, we affirm and award attorney fees and costs to the Johnsons.

FACTS

I. BACKGROUND

Hubbard and Wilcox purchased a piece of land, Lot 2, in 2019 from Thomas and Verna Herron. The Johnsons purchased Lot 3, a piece of land directly west of Lot 2, in 2016.



Both properties are bordered by a private road to the south and Cromwell Drive to the north. In 2003, the land was surveyed and a boundary line between Lot 2 and Lot 3 was recorded with the county. The prior owners of Lot 3 constructed a barbed wire fence several inches on their side of the boundary line established by the 2003 survey, extending along the entire boundary line. The Herrons, the prior owners of Lot 2, then replaced that fence with a wooden fence on the boundary line itself. The wooden fence did not extend along the entire boundary line: there was a distance of about 20 feet between the northern end of the wooden fence and Cromwell Drive. In a declaration, the Herrons stated that they used the area between the fence and Cromwell Drive to store compost.

When Hubbard and Wilcox purchased Lot 2 from the Herrons, they "were informed that although the fence constructed by the Herrons did not run all the way to [] Cromwell Drive on the north, the property line followed the same line to Cromwell Drive." Clerk's Papers (CP) at 22.

In 2016, the Johnsons had the property surveyed again by the same survey company. The 2003 survey and the 2016 survey had the same marker for the southernmost boundary point between Lot 2 and Lot 3. However, the 2016 survey marker for the northernmost boundary point between the properties was four feet east of the 2003 survey marker. So, between the 2003 and 2016 survey boundary lines, there was a disputed triangular strip of land. Under the 2016 survey, the Herron's fence, which followed most of the boundary line established by the 2003 survey, encroached onto Lot 3. The triangular strip of land between the survey boundaries included both this fenced area and the nonfenced area at the northern end between the survey boundaries, which is a small, rectangular "[c]ontested [s]trip" of land. CP at 23.

3

## II. Legal Proceedings

### A. Complaint

In November 2023, Hubbard and Wilcox filed a complaint claiming adverse possession of land on Lot 3. The complaint is the subject of the dispute in this appeal, and it asserted multiple times that Hubbard and Wilcox sought title to the "area encompassed by the fence." CP at 2-3.

In their answer to the complaint, the Johnsons agreed that Hubbard and Wilcox had adversely possessed the claimed area on their side of the fence. However, the Johnsons acknowledged that the fence did not run the entire length of the property and repeatedly stated that they "[did] not agree that the unfenced area has been adversely possessed." CP at 6. The Johnsons further stated that if Hubbard and Wilcox "make an adverse possession claim for the area outside of the fenced area, they must ascertain by survey the area that they claim. Until they do, the [Johnsons] cannot respond and therefore deny any claim for adverse possession outside of the fenced area." *Id.* More than once, the Johnsons asserted in their answer that more precise survey information was needed before the parties could assess anything with regard to the contested strip north of the fence.

### B. Motion for Summary Judgment

Hubbard and Wilcox then moved for summary judgment. In their motion, Hubbard and Wilcox stated that the area in dispute was the "strip of property roughly 4 feet by 20 feet between the parties' properties"—the contested strip between the 2003 and 2016 survey lines not covered by the fence—and sought quiet title to that irregular rectangle of property. CP at 13. Hubbard and Wilcox acknowledged in their motion for summary judgment that there were disputed issues of fact as to the proper boundary line between the properties. Hubbard and Wilcox claimed that their

complaint sought adverse possession of the entire triangular strip between the 2003 and 2016 survey boundary lines, including the contested strip that was to the north of the fenced area. And they asserted that the prior owners of their lot had stored compost in the area north of the fence for more than 10 years such that they were entitled to the contested strip by adverse possession. Hubbard and Wilcox alleged that all of the elements of adverse possession were met and they were entitled to summary judgment declaring that the contested strip to belong to them.

The Johnsons filed a response to the summary judgment motion. The response did not procedurally argue that Hubbard and Wilcox could not claim adverse possession for the contested strip not encompassed by the fence because title to that portion of the property was not the subject of the complaint. Instead, the response substantively addressed the adverse possession claim for the contested strip. The Johnsons submitted historical aerial photographs showing the development of the fence and the contested strip north of the fence, spanning several years. The response also stated that the Johnsons' answer to the complaint had "made it clear that there was a dispute regarding this area." CP at 33.

The trial court held a hearing on Hubbard and Wilcox's summary judgment motion. During the hearing, the Johnsons argued for the first time that counsel realized when preparing for the hearing that the complaint "says nothing" about the contested strip that was the subject of the summary judgment motion, so a claim for adverse possession of that area was not properly before the court. 1 Verbatim Rep. of Proc. (VRP) at 10.

The trial court confirmed that the Johnsons were arguing that "the summary judgment motion is not properly before the Court because it covers property that is not mentioned in the complaint" and stated, "So that's dispositive. Let's stop right there." 1 VRP at 12.

5

Hubbard and Wilcox's counsel, Paul Brain, responded that the Johnsons should have raised this argument in their response to the summary judgment motion so that Brain could have addressed it. Brain further stated that the complaint said "the boundary line is delineated by the line on which the fence was constructed. The boundary line runs from the alley at the bottom to Cromwell Drive at the north." 1 VRP at 13.

Replying to Brain, the Johnsons first reiterated their argument that a claim for the contested strip was not in the complaint. Then, as a secondary argument, they briefly addressed the merits of the unpleaded adverse possession claim for the contested strip.

In response, Brain quoted the complaint:

> "The legal boundary between plaintiffs' and defendants' properties is shown in the recorded plat and a survey conducted by Thornton Surveying in 2003. . . . Based on a subsequent survey by the same Thornton Surveying in 2016, defendants assert that certain of plaintiffs' improvements are encroachment on the property of the defendants."

1 VRP at 19 (alteration in original) (quoting record). However, this quotation specifically omits a sentence stating that Hubbard and Wilcox "have color of title to the area *encompassed by the fence*." CP at 2 (emphasis added).

The trial court reread the operative portions of the complaint aloud during the hearing, reciting multiple instances where the requests for relief were limited to the "area encompassed by the fence." 1 VRP at 21. The trial court determined that the contested strip not encompassed by the fence was not part of Hubbard and Wilcox's original claim for relief. The trial court accordingly denied their summary judgment motion without prejudice, writing, "The decision is based on procedural issues." CP at 86.

C.      Motion for Reconsideration & Sanctions

Rather than amending their complaint, Hubbard and Wilcox filed a motion for reconsideration of their summary judgment motion under CR 59, claiming they were entitled to reconsideration of the denial of summary judgment under CR 59(a)(7), a lack of evidence to justify the decision; CR 59(a)(8), an error in law; and CR 59(a)(9), a miscarriage of substantial justice. They quoted language from their summary judgment motion that the complaint sought quiet title "'to the entirety of the triangular strip,'" presumably meaning both the fenced area and the contested strip north of the fenced area. CP at 90 (quoting record). They reiterated that the Johnsons should not have been able to argue that the contested strip not encompassed by the fence was not included the complaint for the first time at the summary judgment hearing. They further contended that the complaint put the Johnsons on notice of a claim for adverse possession of that area given the alleged admissions in their answer and their response to the summary judgment motion assuming that the contested strip was at issue. Finally, Hubbard and Wilcox stated that because the Johnsons substantively responded to the summary judgment motion, the trial court should have considered the complaint automatically amended to conform to the arguments in the motion and include this claim under CR 15(b).

The Johnsons responded to the motion for reconsideration, repeating their argument that Hubbard and Wilcox had not included a claim for the contested strip in their complaint. The Johnsons also argued that Hubbard and Wilcox had not properly requested to amend their complaint under CR 15(b) during the summary judgment hearing, which waived the issue. Finally, the Johnsons requested sanctions under CR 11 because Hubbard and Wilcox's motion for

reconsideration was based on "repeated and flagrant misrepresentations" about what was in the complaint. CP at 100.

The trial court denied Hubbard and Wilcox's motion for reconsideration. The trial court further determined that the motion for reconsideration was made in bad faith because it "contained misrepresentations of what is contained in the [c]omplaint" and those misrepresentations were made in both the summary judgment motion and the motion for reconsideration. CP at 156. The trial court imposed sanctions under CR 11 and under its inherent authority to "sanction against bad faith conduct in litigation" to deter ongoing "intentional misrepresentation[s]." *Id.* The trial court imposed sanctions totaling $1,200, almost $500 less than requested, and assigned joint and several liability for the sanctions to Hubbard, Wilcox, and Brain.

Hubbard and Wilcox appealed the denial of their motion for reconsideration and the imposition of sanctions. Brain was jointly and severally liable for the sanctions, and he did not appeal the sanction award against him even though he became a party when sanctions were imposed upon him. *See Breda v. B.P.O. Elks Lake City*, 120 Wn. App. 351, 353, 90 P.3d 1079 (2004). Thus, the sanctions award against Brain is not part of this appeal.

## ANALYSIS

As an initial matter, we address the proper scope of appeal. Hubbard and Wilcox initially appealed the trial court's denial of their motion for reconsideration, including the sanction award. After requesting supplemental briefing on appealability from the parties, a commissioner of this court determined that while a denial of a summary judgment motion and a subsequent motion for reconsideration are generally not immediately appealable, a party can immediately appeal an award of sanctions under CR 11. And an appeal of CR 11 sanctions "may require the examination

of the merits of the underlying issue that prompted the imposition of sanctions." Ruling Converting Discr. Rev. Action to Appeal (Oct. 29, 2024). Thus, this appeal addresses solely the award of sanctions and only engages with the merits of the motion for reconsideration as necessary to address the trial court's sanctions decision. We do not address the propriety of the order denying summary judgment as that is not an appealable order and there has been no order granting discretionary review of that decision.

CR 11 outlines the requirements for pleadings, motions, and legal memoranda filed with the court. The rule specifies that the "signature of a party or of an attorney" on such a filing signifies that "to the best of the party's or attorney's knowledge," the filing is (1) well-grounded in fact; (2) warranted by law; (3) "not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;" and (4) contains only those denials of factual contentions that are warranted on the evidence or reasonably based on a lack of information or belief. CR 11(a)(1)-(4). And CR 11(a)(4) further provides in relevant part: "If a pleading, motion, or legal memorandum is signed in violation of this rule, the court . . . may impose upon the person who signed it, a represented party, or both, an appropriate sanction." The purpose of CR 11 "'is to deter baseless filings and to curb abuses of the judicial system.'" *Biggs v. Vail*, 124 Wn.2d 193, 197, 876 P.2d 448 (1994) (emphasis omitted) (quoting *Bryant v. Joseph Tree, Inc.*, 119 Wn.2d 210, 219, 829 P.2d 1099 (1992)).

Trial courts also have an inherent authority to sanction a party upon a finding of "bad faith." *Hedger v. Groeschell*, 199 Wn. App. 8, 13, 397 P.3d 154 (2017). "A party may demonstrate bad faith by, *inter alia*, delaying or disrupting litigation." *State v. S.H.*, 102 Wn. App. 468, 475, 8 P.3d 1058 (2000). Sanctions under the trial court's inherent authority are appropriate if "an act affects

'the integrity of the court and, [if] left unchecked, would encourage future abuses.'" *Id.* (alteration in original) (quoting *Gonzales v. Surgidev Corp.*, 1995-NMSC-047, 120 N.M. 151, 899 P.2d 594, 600 (1995)). We review an award of sanctions for an abuse of discretion. *See Biggs*, 124 Wn.2d at 197; *Hedger*, 199 Wn. App. at 14.

Hubbard and Wilcox argue that the trial court abused its discretion by imposing sanctions for the contents of their motion for reconsideration. As an initial matter, the Johnsons assert that Hubbard and Wilcox waived this issue by not arguing against sanctions on the merits, instead simply calling the argument for sanctions "ludicrous." CP at 111. Although not a substantive argument against sanctions, this argument that Hubbard and Wilcox made below was enough not to waive the issue, and we should reach the merits of the sanctions award on appeal.

Here, the trial court imposed sanctions because it determined that Hubbard and Wilcox's motion for reconsideration repeated misrepresentations about what claims were actually in the complaint in bad faith. The complaint clearly stated multiple times that Hubbard and Wilcox sought title to the "area encompassed by the fence." CP at 2-3. And the language that Hubbard and Wilcox cited from the complaint during the summary judgment hearing was misleading: it quoted two sentences discussing the legal boundary between the properties and omitted the intermediate sentence where Hubbard and Wilcox specifically stated that they only sought title to the "area encompassed by the fence." CP at 2.[1] The trial court clearly noted the actual language in the complaint during the hearing, pointing to multiple specific portions of the complaint.

---

[1] Though Hubbard and Wilcox did not repeat this exact language in their motion for reconsideration, they omit the same sentence describing their claim for relief again in their briefing on appeal.

CR 11(a)(1) allows a trial court to impose sanctions if a motion is not "well grounded in fact." And the trial court may use its inherent authority to award sanctions to deter future abuses of the litigation process. *S.H.*, 102 Wn. App. at 475. In their motion for reconsideration, Hubbard and Wilcox repeated the language from their summary judgment motion that the complaint sought quiet title "'to the entirety of the triangular strip,'" meaning both the fenced area and the contested strip north of the fenced area between the two survey boundaries. CP at 90 (quoting record). Hubbard and Wilcox did not address the trial court's conclusion at summary judgment—or their own repeated language in the complaint—that the complaint sought relief involving only the land encompassed by the fence.

Because Hubbard and Wilcox repeated the same misrepresentations from their summary judgment motion about the contents of the complaint instead of simply amending their complaint to include a claim for the contested strip, the trial court did not abuse its discretion by imposing sanctions. Additionally, because we should affirm the trial court's award of sanctions on these grounds, resolving the only appealable issue, we need not further address the parties' additional arguments in this appeal.

## ATTORNEY FEES

The Johnsons request attorney fees and cost under several alternative theories. First, the Johnsons argue that this appeal is frivolous and request attorney fees under RAP 18.9.

Under RAP 18.9(a), we have discretion to award attorney fees when a party files a frivolous appeal. "An appeal is frivolous if, considering the entire record, the court is convinced that the appeal presents no debatable issues upon which reasonable minds might differ, and that the appeal is so devoid of merit that there is no possibility of reversal." *Advocs. for Responsible Dev. v. W.*

*Wash. Growth Mgmt. Hr'gs Bd.*, 170 Wn.2d 577, 580, 245 P.3d 764 (2010). We resolve doubts about frivolousness in the appellant's favor. *Id.*

Here, while reasonable minds may differ on some of the other procedural issues that Hubbard and Wilcox raise regarding their motion for reconsideration, the appeal of the sanctions award is frivolous. The sanctions were based on Hubbard and Wilcox's misrepresentation of the complaint. The trial court cited and read relevant portions of the complaint aloud to Hubbard and Wilcox's counsel during the summary judgment hearing. The complaint plainly does not include a claim for the rectangular piece of land outside the fence despite Hubbard and Wilcox's repeated assertions to the contrary. Thus, we award attorney fees for this appeal to the Johnsons.

Finally, the Johnsons argue that we should award them costs under RAP 14.2. Under RAP 14.2, we may award statutory attorney fees and costs "to the party that substantially prevails on review." For the purposes of this rule, the "prevailing party is determined by the outcome of the appeal." *Hudson v. Hapner*, 170 Wn.2d 22, 35, 239 P.3d 579 (2010). Here, the Johnsons prevail on the sanctions decision at issue in this appeal, so we award them costs under RAP 14.2.

CONCLUSION

We affirm and award attorney fees and costs to the Johnsons.

No. 59913-9-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

GLASGOW, J.

We concur:

LEE, P.J.

PRICE, J.