# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

MARIA HEDGER, a single person,

        Respondent,

        v.

LISA GROESCHELL and JOHN DOE
GROESCHELL, wife and husband, and
the marital community composed
thereof,

        Appellant.

No. 74149-7-I

DIVISION ONE

PUBLISHED OPINION

FILED: May 15, 2017

TRICKEY, J. — Maria Hedger sued Lisa Groeschell for personal injuries sustained in an automobile accident. After Hedger prevailed at mandatory arbitration, Groeschell sought a jury trial de novo. During the litigation, the court imposed several thousand dollars in sanctions against Groeschell.

The jury awarded Hedger less in damages than the arbitrator had awarded. The trial court then determined that Groeschell had not improved her position from the arbitration because the amount of sanctions ordered against her, combined with Hedger's damages, were greater than the arbitration award. Accordingly, the court awarded Hedger attorney fees.

Groeschell appeals the trial court's award of attorney fees to Hedger. Because the trial court should not have considered the sanctions it imposed against Groeschell when comparing her postarbitration and posttrial positions, we reverse the award of attorney fees.

Groeschell also appeals the trial court's decision to sanction her for raising the deception doctrine defense on the eve of trial. Because we agree with the trial

court that Groeschell's actions constituted procedural bad faith, we affirm the imposition of sanctions.

## FACTS

Hedger and Groeschell were in a car accident in September 2013. Hedger proceeded straight through an intersection as Groeschell started to make a left turn. The two vehicles collided.

Hedger sued Groeschell for negligence. The case proceeded to mandatory arbitration. Hedger prevailed at arbitration. The arbitrator found Groeschell to be entirely at fault and awarded Hedger $17,880.10 in damages. The arbitrator later amended that award to include $931.76 in statutory costs and fees, for a total award of $18,811.86.

Groeschell requested a trial de novo. Prior to trial, the court sanctioned Groeschell for failing to participate in good faith in the mediation and failing to timely disclose expert witness reports.

A few days before trial, Groeschell asserted a deception doctrine defense. Groeschell withdrew the defense when she could not produce written documents showing she had raised it at arbitration. The court sanctioned her $3,125 for procedural bad faith.

The jury returned a verdict for Hedger but found her to be five percent at fault. It also found that her combined economic and general damages totaled only $11,200. Thus, Hedger's total damage award at trial was $10,640. The court awarded $2,162.15 in statutory costs.[1] The three sanctions the court imposed on

---

[1] That amount represents the cost of deposition transcripts for Dr. Steven Watson and Groeschell. It does not appear to include the $835.76 in other statutory costs that the

Groeschell totaled $6,147.49. The total judgment after the trial de novo was $18,949.64.

Hedger moved for attorney fees under MAR 7.3 on the ground that Groeschell had not improved her position after the trial de novo. The court agreed with Hedger and awarded her over $60,000 in attorney fees.

Groeschell appeals the award of sanctions based on the deception doctrine defense and the trial court's award of attorney fees under MAR 7.3.

ANALYSIS

Sanctions

Groeschell argues that the trial court abused its discretion in sanctioning her for raising the deception defense on the eve of trial. Specifically, she argues that pleading a contributory negligence defense satisfies any need to plead the deception doctrine defense and that, regardless, Hedger had sufficient notice that Groeschell intended to rely on the deception doctrine. Because the deception doctrine raises different issues than a general contributory negligence defense, and Groeschell did not otherwise provide adequate notice, we disagree.

The trial court has the inherent authority to sanction a party for "bad faith." State v. S.H., 102 Wn. App. 468, 475, 8 P.3d 1058 (2000). "Procedural bad faith is unrelated to the merits of the case and refers to 'vexatious conduct during the

---

court determined it should award for statutory attorney fees, reports and records, filing fees, and service of process fees. Added with the deposition costs, the statutory costs award should have been $2,997.91, which was the amount Hedger's attorney indicated she was going to record. The parties included only $2,162.15 in statutory costs when they calculated the total judgment. The parties or trial court may wish to address this issue on remand. If failing to include that $835.76 was an error, the total judgment after the trial de novo should be $19,785.40. The failure to include the $835.76 in costs does not affect our decision.

3

course of litigation.'" Rogerson Hiller Corp. v. Port of Port Angeles, 96 Wn. App. 918, 928, 982 P.2d 131 (1999) (quoting Jane P. Mallor, Punitive Attorneys' Fees for Abuses of the Judicial System, 61 N.C. L. Rev. 613, 644 (1983)). The conduct can include delaying or disrupting litigation. S.H., 102 Wn. App. at 475. To support sanctions under this inherent power, the trial court must make a finding that the litigant acted in bad faith. S.H., 102 Wn. App. at 475.

This court reviews a trial court's decision to award sanctions for an abuse of discretion. S.H., 102 Wn. App. at 473.

Here, on August 27, 2015, during pretrial hearings, Hedger objected that Groeschell had raised a deception defense for the first time in her report from expert witness Bryan Jorgenson, which was filed on August 21, 2015. The court asked Groeschell why she was raising the defense so late. Groeschell noted that she had pleaded contributory negligence as an affirmative defense, and believed that was enough to give Hedger notice of her intent to use the deception doctrine as a defense.

Groeschell also said that she was not raising the defense late because she had argued the deception doctrine defense at arbitration.[2] The court asked if she had referred to the defense in writing in any of her arbitration materials, to which Groeschell responded, "That I'm going to have to look into, Your Honor."[3] The court asked, "And then, and you specifically made the argument, the deception defense argument[,] to the arbitrator?," to which she replied, "Yes."[4]

---

[2] Hedger retained new counsel for the trial de novo.
[3] Report of Proceedings (RP) (Aug. 27, 2015) at 59.
[4] RP (Aug. 27, 2015) at 59.

The trial court deferred its ruling to give Groeschell an opportunity to produce a writing showing that she had raised the deception defense at arbitration. That afternoon, Groeschell informed the court that she could not find any mention of the deception defense in her prehearing statement of proof or the arbitration decision. She repeated that she still believed that she had argued the deception doctrine defense at arbitration, but withdrew the deception doctrine defense for trial.

After trial, Hedger moved for sanctions based on Groeschell's late disclosure of the deception defense. The court accepted Groeschell's assertion that she had not willfully misrepresented whether she had raised the defense at arbitration, but found, in its oral ruling, that, before hiring an expert and asserting this defense on the eve of trial, Groeschell should have assessed "whether it was appropriate to inject it at such a late date before trial."[5] In its written ruling, the trial court found that Groeschell's actions were "unfair" to Hedger and caused her to "divert her attention away from trial preparation to investigate th[at] particular defense and prepare to address it at trial."[6] The court awarded Hedger $3,125 in sanctions, as attorney fees for the time Hedger's counsel, associate, and paralegal spent addressing the deception doctrine defense and the motion for sanctions.

Groeschell's primary argument is that there was no procedural bad faith because she raised contributory fault as an affirmative defense in her answer and the deception doctrine is a component of that defense.[7] Because the deception

---

[5] RP (September 25, 2015) at 79.
[6] Clerks Papers (CP) at 438-39.
[7] In a footnote in her opening brief, Groeschell argues, in the alternative, that this court should reverse the sanctions because the trial court did not make an explicit finding of bad

5

defense raises factual issues that are distinct from those raised by contributory fault, we disagree.

In order to "avoid surprise," defendants must affirmatively plead specific defenses and "'any other matter constituting an avoidance or affirmative defense.'" Mahoney v. Tingley, 85 Wn.2d 95, 100, 529 P.2d 1068 (1975) (quoting CR 8(c)). A general denial is appropriate if the defense does not raise any new issues. See Shinn Irrigation Equip., Inc. v. Marchand, 1 Wn. App. 428, 430-31, 462 P.2d 571 (1969). "'Denials must be definite enough to inform the adverse party of the issues he must be prepared to meet.'" Shinn Irrigation, 1 Wn. App. at 430 (quoting 1A Barron & Holtzoff, Federal Practice and Procedure, § 277, at 147).

While a defendant may rely on both the contributory fault and deception doctrines to allocate responsibility to a plaintiff for her injuries, the deception doctrine applies only in specific circumstances. Under the doctrine of contributory fault, the plaintiff is responsible for whatever portion of her injury is attributable to her own fault. RCW 4.22.005. That fault includes all "acts or omissions, including misuse of a product, that are in any measure negligent or reckless toward the person or property of the actor or others." RCW 4.22.015. But the deception doctrine applies only "where a favored party has somehow deceived a reasonably

___

faith. A finding that the party's behavior was "'inappropriate and improper' is tantamount to a finding of bad faith." S.H., 102 Wn. App. at 475 (quoting Wilson v. Henkle, 45 Wn. App. 162, 175, 724 P.2d 1069 (1986)). But, "in the absence of an express finding, appellate courts have upheld sanctions where an examination of the record establishes that the court found some conduct equivalent to bad faith." State v. Gassman, 175 Wn.2d 208, 211, 283 P.3d 1113 (2012). Here, the trial court said that it had "the authority to assess attorney fees for bad faith conduct in litigation" and then awarded fees "on that basis." RP (September 25, 2015) at 79. We conclude that the trial court's findings are sufficient to establish a finding of bad faith.

prudent disfavored driver so as to cause that driver to proceed on the assumption that there was a fair margin of safety." Wood v. City of Bellingham, 62 Wn. App. 61, 66, 813 P.2d 142 (1991).

Unlike contributory fault, the deception defense always puts what the defendant saw at issue because "[o]ne cannot be deceived by that which he does not see." Tobias v. Rainwater, 71 Wn.2d 845, 853, 431 P.2d 156 (1967). Therefore, the deception defense raises an issue that a general contributory fault defense does not. It is a separate affirmative defense that the defendant must plead in order to comply with CR 8(c). Accordingly, the trial court did not abuse its discretion by sanctioning Groeschell for raising the defense for the first time on the eve of trial.

Groeschell argues that, regardless of any rigid pleading requirements, sanctions were not appropriate because Hedger had sufficient notice of her defense. We disagree. Groeschell included an instruction for the deception defense in her proposed jury instructions, which she filed on August 17, 2015, nine days before trial began. This was more than a month past the discovery cut-off.

Moreover, it was not until August 27, 2015, when Hedger received Groeschell's trial brief, that Hedger would have been able to connect Groeschell's legal argument to the factual basis for asserting it.[8] In her trial brief, Groeschell asserted that she "observed [Hedger's] vehicle slowing" as the "traffic light turned from green to yellow."[9] Then, according to Groeschell, Hedger accelerated into

---

[8] Groeschell argues that her expert witness discussed the deception defense in his report, but that report does not appear in the record. Regardless, Hedger did not receive that report until August 21, 2015, still only a few days before trial.
[9] CP at 1006.

7

the intersection, after the light turned red.

Neither Groeschell's answer to Hedger's complaint nor her answers to Hedger's interrogatories asserted that Groeschell observed Hedger slow down as she approached the intersection. Hedger should not have had to address this new factual assertion after the discovery cut-off and right before trial began. As the trial court found, this was unfair to Hedger. It was not an abuse of discretion for the trial court to sanction Groeschell and have her pay the attorney fees that Hedger incurred in responding to the new defense and moving to sanction Groeschell for raising the defense so late.

## Improved Position

Groeschell argues that the trial court erred by awarding attorney fees to Hedger under MAR 7.3. Specifically, she contends that she improved her position at the trial de novo because the jury awarded Hedger less in damages than the arbitrator had. Hedger responds that the trial court properly compared the total judgment after arbitration with the total judgment after the trial de novo. We hold that the trial court should not have considered the sanctions it imposed against Groeschell in its determination of whether she improved her position and, that without those sanctions, Groeschell did improve her position.

When a party seeks a trial de novo after mandatory arbitration and fails to improve her position, she must pay the other party's reasonable attorney fees. RCW 7.06.060(1); MAR 7.3. A party's "position prior to trial should be interpreted as an ordinary person would." Nelson v. Erickson, 186 Wn.2d 385, 387, 377 P.3d 196 (2016).

8

Until recently, this court consistently held the court should assess a party's position by comparing comparables. See, e.g., Wilkerson v. United Inv., Inc., 62 Wn. App. 712, 717, 815 P.2d 293 (1991); Tran v. Yu, 118 Wn. App. 607, 615-16, 75 P.3d 970 (2003). But, in Bearden v. McGill, this court concluded that the trial court should compare only the jury verdict and the arbitrator's initial award. 197 Wn. App. 852, 860-61, 391 P.3d 577 (2017). The court will not conclude that a party has improved its position when the party did so only by prevailing on a claim that was not arbitrated. See Christie-Lambert Van & Storage Co., Inc. v. McLeod, 39 Wn. App. 298, 304, 693 P.2d 161 (1984). Accordingly, the court should consider only the portion of a jury's verdict attributable to claims that were arbitrated.

In Tran, the only issue at arbitration was the plaintiff's damages. 118 Wn. App. at 616. After a trial de novo, the jury awarded the plaintiff less than the arbitrator had awarded, but, because of CR 37 sanctions and statutory costs, the plaintiff's total award at trial was higher than her award at arbitration. Tran, 118 Wn. App. at 616. The Court of Appeals held that the statutory costs and CR 37 sanctions "should not be considered in a MAR 7.3 determination" because they had not been before the arbitrator. Tran, 118 Wn. App. at 616. Accordingly, the defendant had improved her position and the plaintiff was not entitled to fees under MAR 7.3. Tran, 118 Wn. App. at 616-17.

Initially, the Supreme Court "generally" agreed with the Court of Appeals' comparing comparables doctrine. Haley v. Highland, 142 Wn.2d 135, 154, 12 P.3d 119 (2000). More recently, in Niccum v. Enquist, the Supreme Court clarified that

it had *not* adopted the doctrine of comparing comparables—but it did not reject the doctrine. 175 Wn.2d 441, 448, 286 P.3d 966 (2012). The court noted that none of the comparing comparables cases dealt with "postarbitration offers of compromise." Niccum, 175 Wn.2d at 448. Taking a "straightforward" approach to the issue, the court compared the lump sum of the settlement offer to the total judgment at the trial de novo. Niccum, 175 Wn.2d at 452-53.

This court reviews de novo an award of attorney fees under MAR 7.3. Bearden, 197 Wn. App. at 855.

Here, Hedger's initial award at arbitration was $17,880.10, which increased to $18,811.86 with statutory costs. After the trial de novo, the jury awarded Hedger only $10,640. Comparing only the initial arbitration award and the jury verdict, Groeschell improved her position. Thus, we conclude that an award of attorney fees under MAR 7.3 would be inappropriate. But the final judgment, which included statutory costs and sanctions, was $18,949.64.[10]

Hedger argues that this court must include the more than $6,000 in sanctions in its MAR 7.3 determination or it will allow Groeschell to "game the system."[11] We disagree and adhere to this court's decision in Tran. The court should not include sanctions in its MAR 7.3 determinations.[12]

---

[10] See footnote 1, explaining possible error in the trial court's calculation of final judgment. For purposes of this analysis, we use the trial court's figures. The difference does not impact our analysis.

[11] Br. of Resp't at 1.

[12] Moreover, trial courts follow certain principles when determining what sanctions to impose. Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp., 122 Wn.2d 299, 355, 858 P.2d 1054 (1993). Paramount among them is that the court should impose "the least severe sanction that will be adequate." Fisons, 122 Wn.2d at 355-56.

Each time Groeschell behaved improperly during the litigation, the trial court carefully considered her behavior and imposed an appropriate sanction. If the court

Here, the parties attended mediation in July 2015. Afterward, Hedger moved for sanctions against Groeschell, arguing that she had refused to meaningfully prepare for or participate in the mediation. The court awarded Hedger $2,000 in attorney fees, $422.49 in costs and fees for the mediation, and a $100 sanction, for a total of $2,522.49. The court also sanctioned Groeschell $500 for failing to timely file the report of her expert witness. And, as discussed thoroughly above, the trial court sanctioned Groeschell $3,125 for improperly raising the deception doctrine defense right before trial.

None of the sanctions imposed here related to the merits of the case. Furthermore, none of the sanctions were or could have been litigated before the arbitrator, because each was based on Groeschell's conduct during the trial de novo process. We will not consider them in the MAR 7.3 determination.

The purpose of MAR 7.3 is to discourage meritless appeals. Nelson, 186 Wn.2d at 388. The jury reduced Hedger's damages by roughly 40 percent. Clearly, Groeschell's appeal had merit. We reverse the award of attorney fees.

## Attorney Fees on Appeal

Hedger requests attorney fees on appeal. A party who is entitled to attorney fees under MAR 7.3 after a trial de novo because the opposing party failed to improve its position, is entitled to attorney fees on appeal if that party appeals and, once again, fails to improve its position. See Boyd v. Kulczyk, 115 Wn. App. 411,

---

includes sanction awards in its MAR 7.3 determination, it will essentially be imposing an additional $60,000 sanction against Groeschell.

Including sanctions in a MAR 7.3 determination would also disregard the court's warning that sanctions should not become a "fee shifting" mechanism or profitable "cottage industry" for attorneys. See Fisons, 122 Wn.2d at 356.

417, 63 P.3d 156 (2003). But Groeschell improved her position on appeal. Thus, Hedger is not entitled to attorney fees.

We reverse the trial court's award of attorney fees under MAR 7.3, and remand for entry of a new judgment consistent with this opinion.

_____Trickey, J_____

WE CONCUR: