IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STEPHENIE Y. LOCK, an individual,<br><br>Appellant,<br><br>v.<br><br>AMERICAN FAMILY INSURANCE COMPANY, a Foreign Corporation, doing business in Washington,<br><br>Respondent. | No. 85844-1-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

COBURN, J. — This appeal follows a trial on remand in what is now a nearly decade-long intensely litigated contest originally stemming from a motor vehicle collision in 2013. Lock sued American Family Insurance Company for uninsured motorist (UIM) benefits as well as extracontractual claims under the Washington Consumer Protection Act (CPA), the Insurance Fair Conduct Act (IFCA), and common law insurance bad faith. Lock v. Am. Fam. Ins. Co., 12 Wn. App. 2d 905, 909, 460 P.3d 683 (2020). In the first appeal, this court, with one exception, affirmed the trial court's dismissal of the extracontractual claims following trial that included a $413,575 verdict on Lock's common law insurance bad faith claim. Id. at 925-26. This court remanded for trial on a claim for common law insurance bad faith based on American Family's corporate

counsel's conduct of directly contacting Lock pretrial.[1] Id. at 924-25. In doing so, this court did not address Lock's claim that the trial court erred in vacating its attorney fee award for bad faith litigation tactics and instead vacated the trial court's order awarding or denying attorney fees and instructed that any claims for fees should be addressed on remand. Id. at 925 n.4. Neither party petitioned our state Supreme Court for review of this court's decision.

On remand, two different superior court judges denied Lock's motion for attorney fees based on American Family's bad faith litigation, and the trial court rejected Lock's argument that she could retry all her previously dismissed bad faith insurance claims. A jury awarded Lock $40,000 on her common law insurance bad faith claim. Lock appeals contending (1) the trial court erroneously limited the scope of the trial on remand, (2) the trial court wrongly denied her an evidentiary hearing on racial bias, (3) judicial bias violated her right to due process, and (4) the trial court erroneously denied her bad-faith-litigation award of attorney fees. American Family asks this court to affirm and only alternatively cross-appeals.

We affirm.

## FACTS

In 2013 Lock was rear-ended by an uninsured driver and diagnosed with neck and back pain. Id. at 909.[2] At the time of the collision, Lock's American Family auto insurance policy included personal injury protection (PIP) and UIM benefits. Id. at 910.

---

[1] This court also remanded for the trial court to offset the jury's $21,000 UIM award by the amount American Family had paid under Lock's PIP policy for her medical bills prior to trial. Lock, 12 Wn. App. 2d at 928, 930, 932.

[2] Because the underlying facts are not at issue in this appeal, we cite to this court's previous opinion in this matter to provide factual context.

After the collision, American Family paid all of Lock's submitted medical bills. Id. at 910-11, 914. American Family later notified Lock it would not pay for any further medical treatment after an independent medical exam determined she did not require any additional diagnostic testing or treatment. Id. at 910-11. Lock filed a UIM claim against American Family in March 2015. Id. at 911. In November Lock amended her complaint to also include extracontractual claims under the CPA, chapter 19.86 RCW; the IFCA, RCW 48.30.015; and common law insurance bad faith. Id.

After Lock amended her complaint, American Family twice unsuccessfully tried to remove the case to federal court. Id. at 911-12. After the first remand back to state court, a King County Superior Court Judge denied American Family's motion for a summary judgment hearing on shortened time and denied American Family's request for a pretrial summary judgment hearing. Id. American Family then again tried to remove the case to federal court and filed the same summary judgment motion. Id. at 912. After determining that American Family relied on its own estimate of general damages as the basis for removal, a United States District Court Judge sanctioned American Family and remanded the case back to state court. Id. The district court judge found that American Family "flat-out lied to the Court" about the amount in controversy and used "cheap trial tactics" by removing the case in an attempt to obtain summary judgment. Id. The district court judge sanctioned American Family by awarding Lock attorney fees in the amount of $4,153.75. Id. Once back in state court the second time, the superior court judge set trial for May 2017 and again denied American Family's request to calendar its motion for summary judgment "due to its bad faith litigation tactics." Id.

In March 2017 American Family's corporate counsel mailed the $4,153.75 sanction check with a cover letter on American Family "Claims Legal Division" letterhead directly to Lock's home. Id. at 913, 916-17. The cover letter was captioned with the case name and King County Superior Court case number and stated the payment "represents full and final settlement of all claims in the above-captioned matter." Id. at 913. We refer to the sending of the check and cover letter as American Family's "direct contact." See id. at 913, 923-24.

The first trial court denied Lock's request for a jury instruction that American Family's direct contact was evidence of bad faith conduct, and concluded there were no damages caused by the direct contact. Id. at 915. The jury found that American Family had not committed an IFCA violation. Id. at 916. The jury awarded Lock a $21,000 verdict on her UIM claim, $8,500 on her CPA claim, and $413,575 on her bad faith claim. Id. Lock moved for attorney fees based on American Family being found as having "acted in bad faith" by a unanimous jury, the federal district court judge, and the superior court judge who denied American Family's request to calendar a motion for summary judgment. The first trial court initially granted attorney fees and directed Lock to submit a fee declaration segregating the fees incurred due to American Family's bad faith litigation conduct.[3] Id. at 919.

---

[3] The trial court's initial order granting attorney fees states:
To obtain an award of those fees and costs, plaintiff shall submit a fee declaration that segregates those fees incurred due to American Family's bad faith. Examples of such fees include: (1) fees incurred to reschedule American Family's 30(b)(6) deposition; (2) fees incurred [to] attend and repeatedly prepare for any deposition that American Family failed to attend despite not having a protective order in place; (3) fees incurred to oppose American Family's improper efforts to get a hearing on summary judgment after [a superior court judge] ruled she would not hear it; and (4) fees incurred to address American Family's improper removals to federal court.

The trial court also granted American Family's motion for JNOV and dismissed Lock's CPA and bad faith extracontractual claims.[4] Id. at 916, 918. Relevant to this appeal, the trial court held in part that Lock's failure to prove evidence of damages proximately caused by any bad faith action by American Family invalidated the jury's common law insurance bad faith verdict as a matter of law. Id. at 918.

American Family also moved for reconsideration of the trial court's attorney fee award. Id. at 919. The first trial court granted the motion and vacated his prior order awarding attorney fees. Id. The court reasoned that American Family provided additional procedural background in its motion for reconsideration causing the court to more fully consider the record, and that Lock failed to segregate her requested fees as ordered.[5]

On appeal, this court held that "[p]ostlitigation conduct of the insurer's counsel is not the basis for liability for insurance bad faith." Id. at 923. This court affirmed the trial court's dismissal of the extracontractual claims except in respect to Lock's common law insurance bad faith claim. Id. at 925, 928, 931-32. This court held that "the trial court erred in excluding evidence of damages that might have resulted from American Family's direct contact with Lock." Id. at 926. The trial court therefore "abuse[d] its discretion by excluding evidence of damages related to American Family's action directly sending the $4,153.75 check to Lock." Id. at 923. Thus, this court held that "[t]he trial court's conclusion in its JNOV that there was no evidence of damages to support Lock's claim of bad faith insurance coverage was erroneous." Id. at 926. This court

---

[4] Only the $21,000 UIM verdict remained. Lock, 12 Wn. App. 2d at 918.
[5] The order states Lock "did not segregate any of the hundreds of thousands of dollars in attorney's fees she initially sought."

"remand[ed] for retrial of Lock's claim for common law insurance bad faith based on American Family's conduct directly contacting Lock pretrial." Id. at 925. Later, at the end in the concluding paragraphs of its opinion, this court wrote:

> We reverse the trial court's order excluding evidence of American Family's direct contact with Lock during litigation and any resulting damages supporting her insurance bad faith claim. We also reverse the trial court's JNOV dismissing Lock's insurance bad faith claim.

Id. at 932. As to attorney fees, this court noted:

> Lock also argued that the trial court erred in vacating its order granting her attorney fees for American Family's bad faith litigation tactics. Because we are remanding for trial on Lock's claim of bad faith, we also vacate the trial court's order awarding or denying attorney fees. Any claims for fees should be addressed on remand.

Id. at 925, n.4. Neither party sought review of this court's decision.

On remand, much litigation ensued. We discuss only what is relevant for this appeal. Lock filed a CR 16 motion in April 2021, prior to the second trial, requesting a pretrial conference in part to discuss "whether implicit bias has [sic] recognized by our [state] Supreme Court in its June 4, 2020 letter has played any role in the proceedings before reassignment."[6] It is undisputed that Lock is Asian and her counsel is Black. American Family filed a response in opposition to Lock's CR 16 motion and moved to strike Lock's counsel's attached declaration. Another King County Superior Court judge denied Lock's CR 16 motion and American Family's motion to strike.

In July 2021 Lock moved for sanctions and attorney fees for American Family's bad faith litigation conduct. Lock asserted this court "remanded this matter for the

---

[6] In the letter addressed to our state's judiciary and legal community, our state supreme court recognized "[t]he devaluation and degradation of black lives is not a recent event" but "is a persistent and systemic injustice that predates this nation's founding." The court called on the legal community to "recognize the harms that are caused when meritorious claims go unaddressed."

imposition of sanctions and attorney fees due to American Family's bad faith litigation conduct." American Family opposed the motion and argued Lock was attempting to relitigate the entire case. The superior court, after reviewing and considering the pleadings, denied the motion in its entirety on the merits.

In August 2021 American Family filed a motion for partial summary judgment requesting the trial court "order that Lock's only viable cause of action for retrial is for common law bad faith, based upon American Family's direct contact with Lock post-litigation." American Family requested the court to confirm that Lock was estopped from relitigating her CPA, IFCA, and Olympic Steamship[7] claims. Lock declined to respond to the motion she described as a "billing attempt" by the defense that is nothing more than asking the trial court to affirm this court's ruling in Lock. The trial court granted American Family's motion and clarified that "the sole issue to be decided at trial" on remand was Lock's common law insurance bad faith claim "as it related to the check and letter sent directly" to Lock. Lock filed a motion for partial judgment entry for the first trial's jury verdict of $413,575 plus interest, which the trial court denied in October. The trial court also denied Lock's motion for reconsideration in November. Lock petitioned the Washington Supreme Court for discretionary review of the October and November orders. Lock also requested an emergency stay.

In January 2022 the Supreme Court commissioner denied Lock's emergency stay request and in April also denied her motion for discretionary review. In May the Supreme Court issued a certificate of finality and remanded to superior court for further

---

[7] Lock had requested attorney fees and costs under Olympic Steamship v. Centennial Ins., 117 Wn.2d 37, 811 P.2d 673 (1991) in her November 2015 amended complaint. Attorney fees are a recoverable damage in a bad faith claim for insurance coverage denial under Olympic Steamship. Id. at 52-53.

proceedings. The Supreme Court commissioner stated that Lock's argument for the stay and discretionary review "relies on a misinterpretation" of this court's decision in Lock. Echoing the emergency stay ruling, the commissioner stated in the discretionary review denial:

> Of particular importance, the Court of Appeals affirmed the superior court's JNOV order, which dismissed Ms. Lock's bad faith claims as a matter of law. That post-verdict order extinguished the jury's award of $413,575. The Court of Appeals reinstated the common law bad faith claim only to the extent it was based on American Family's direct contact during litigation, meaning the check and cover letter mailed to her by American Family's corporate counsel.

The trial on remand occurred in December. In the days leading up to the trial, the trial court considered motions between the parties to strike, for contempt, and for sanctions concurrently with the parties' motions in limine.[8] The substance of these motions and the parties' motions in limine largely centered around the ongoing dispute about what could and could not be litigated at trial. In fact, the trial court explained that the primary motion in limine "is what the parameters of this trial will be" and that the court's decision "on that front will inform a number of both parties' other motions in limine." When the court listed the motions before it and asked the parties if there were any other documents the court did not list but should be reviewed, Lock's counsel stated:

> So I just want to put on the record that ... the history of this case is such that I think it would be necessary for the Court ... to have a ... CR 16 hearing so we can truly understand what's occurred in this case and why we're even having an argument about the scope of the case as (inaudible).

---

[8] American Family filed a motion to strike, for contempt, and for sanctions. Lock filed a response requesting the court to deny the motion and to impose sanctions against American Family. American Family filed a reply in support of its motion to strike, for contempt, and for sanctions. Lock then filed a motion to strike American Family's motion to strike, for contempt, and for sanctions.

Lock then argued the trial should not be limited to bad faith specific to American

Family's single direct contact act. On rebuttal, Lock's counsel argued:

> To look at the Henderson case[9] particularly and listen to the argument, you can hear the justices asking whether it would be fruitless for me to continue to oppose these orders that are clearly not going in my favor. And, yes, it would be fruitless for me to do so. The fact that I used every avenue available to me and to my client to get the Court back on track with this case, I did that. And this fiction that the race issue has been adjudicated is simply false. It has not been addressed.
>
> ...
>
> And if you take the time to look at the motions practiced and look at the orders that have been entered in this case, it is clear, it is absolutely clear that Lock has made a prima facie case that an objective observer who was aware of an explicit bias that it could be found in this case, and that is what has been argued with the CR 16 request for the motion, which American Family ferociously fought against.

In its ruling on the second trial's scope, the trial court read on the record from this

court's prior decision as well as from the Supreme Court commissioner's ruling. The trial

court ruled that "this trial is for the jury to determine what, if any, damages were causally

related by" American Family's direct contact.

The trial court also acknowledged that Lock "raise[d] an extremely valid issue of

racial bias." The court continued:

> I'm saying extremely valid not because I thoroughly assessed the conduct of judicial officers' orders issued in this case but because I recognized that every single individual, including every single judicial officer, has inherent biases, and these inherent biases do play a role in certain decisions that we make.
> I also recognize the frustrations that I think very well may be valid on the part of the plaintiff regarding orders that have consistently gone against the plaintiff in light of a considerable amount of evidence in which one would expect otherwise. However, the reason why I don't think that a proactive effort on my part to hold an evidentiary hearing to determine whether implicit biases did play a role in one or more of the decisions issued by judicial officers after remand before today on this case is

---

[9] Henderson v. Thompson, 200 Wn.2d 417, 421, 518 P.3d 1011 (2022).

because even if I set aside the orders determining the parameters of the issue before the trial of fact ... I still would go to the Court of Appeals ... specificity in their opinion and the Supreme Court's clarification of the issue ... [and] I would arrive at the same conclusion ....

The court then went through each of the parties' motions in limine.[10] Ultimately, the jury decided for Lock and awarded a verdict of $40,000. Lock does not challenge this $40,000 verdict on appeal.

After trial, in January 2023, Lock moved "for the bad faith attorney fees awarded in 2017 after Lock's first trial." In her motion, she asserts this court agreed with Lock and vacated the first trial court's reconsideration of his prior order granting her bad faith attorney fees in 2017. Lock specifically requested all of her bills and costs from 2015 to 2017 and "sanctions for the conduct of American Family post remand where it faced no sanctions for its continued abusive litigation tactics and its continued use of the court system to prolong the litigation." In response, American Family requested the court sanction Lock for procedural and professional conduct rules violations. The second trial court denied Lock's motion for attorney fees, costs, and sanctions. In the same order, the court denied American Family's motion for sanctions.

In June 2023 the trial court entered a satisfaction of judgment. Lock filed a notice of direct appeal to the Washington Supreme Court. American Family filed notice of cross appeal. The Supreme Court transferred the appeal to this court.

---

[10] It appears American Family, based on the trial court's motion in limine rulings, was satisfied to "push to the side" its contempt motion until after trial.

DISCUSSION

Motion to Strike

In her reply brief, Lock requests this court to strike portions of American Family's opening brief based on its "overlength" and "improper use of appendices." Lock asserts violations of the Rules of Appellate Procedure (RAP), including that American Family's appendix includes materials not contained in the record without this court's permission and that certain appendices are irrelevant. See RAP 10.3(a)(8). We deny Lock's motion to strike for two reasons.

First, this court granted American Family's motion to submit an overlong brief. Second, "a motion to strike is typically not necessary to point out evidence and issues a litigant believes this court should not consider." Engstrom v. Goodman, 166 Wn. App. 905, 909 n.2, 271 P.3d 959 (2012); see RAP 1.2(a). This court will not sift through the record or briefs "with a stamp or scissors to prevent the judges who are hearing the case from seeing material deemed irrelevant or prejudicial." Engstrom, 166 Wn. App. at 909 n.2. This court did not rely on American Family's appendices to resolve this appeal.

Scope of Trial

Lock contends the trial court erroneously modified this court's mandate when it limited the trial on remand to the sole issue of American Family's direct contact. Lock asserts this court reversed the JNOV on the jury's bad faith verdict of $413,575 "without limitation" and ordered a new trial on all evidence of American Family's bad faith. Lock argues she should now, out of fairness, recover the original bad faith verdict of $413,575 in addition to her $40,000 verdict on remand. Because her interpretation is

contrary to a fair and plain reading of Lock, we deny her request. See, e.g., 12 Wn. App. 2d at 926, 932.

In Lock, the issues on appeal were the trial court's exclusion of evidence related to American Family's litigation conduct and the court's JNOV dismissing Lock's extracontractual CPA and bad faith claims as a matter of law. 12 Wn. App. 2d at 918-19. This court affirmed the trial court's dismissal of the CPA claim and the court's evidentiary rulings related to Lock's unsuccessful IFCA claim. Id. at 923-25, 928, 931-32.

In respect to the trial court's dismissal of Lock's common law insurance bad faith claim, this court held the trial court abused its discretion only by excluding evidence of damages resulting from American Family's direct contact, which led to the trial court erroneously concluding in its JNOV there was no evidence of damages to support the jury's common law insurance bad faith verdict. Id. at 917-18, 924-26. Except for the trial court's error in considering potential damages resulting from the specific bad faith act of direct contact, this court otherwise rejected Lock's argument that she proved evidence of damages proximately caused by American Family's bad faith conduct.[11] Id. at 925-26.

Lock reads out of context this court's statement that "[w]e ... reverse the trial court's JNOV dismissing Lock's insurance bad faith claim" near the end of this court's opinion. Id. at 932. Lock reads this as allowing a new trial on all of Lock's common law insurance bad faith claims, but ignores this court's holding that postlitigation bad faith

---

[11] This court analyzed and rejected Lock's other arguments that:
the jury (1) knew American Family cut off her benefits, (2) knew that American Family failed to investigate fairly by not providing Dr. Chong with all of her medical records and not consulting with her treating physician, [and] (3) knew that she had to hire an expert whose bill was in excess of $18,000.
Lock, 12 Wn. App. 2d at 925-26.

conduct is rarely admissible because it lacks probative value and has a high risk of prejudice. Id. at 921. In her first appeal to this court, Lock argued that the trial court erred in excluding evidence of American Family's litigation conduct that occurred after she filed her UIM lawsuit. Id. at 919. This court explicitly held, "The trial court did not abuse its discretion in excluding the postlitigation conduct of trial counsel, including evidence of bad faith in the filing of untimely motions for summary judgment and removing the case to federal court." Id. at 923. As to any substantive insurance bad faith claim, read in context, this court's reversal of the JNOV dismissing Lock's extracontractual bad faith claims related to remand for a new trial on Lock's common law insurance bad faith claim "based on American Family's direct contact during litigation" and no other insurance bad faith claim. Id. at 932 (emphasis added); see id. at 923, 925, 931.

The trial court did not err in restricting the trial on remand to American Family's conduct of having direct contact with Lock by mailing her the sanction check and cover letter.

<u>Evidentiary Hearing for Racial Bias</u>

Lock contends she was wrongly denied an evidentiary hearing after raising the issue of racial bias to the trial court. Specifically, Lock argues the trial court erred when it denied Lock's CR 16 motion requesting a pretrial hearing to discuss "whether implicit bias has [sic] recognized by our Supreme Court" had an effect in the proceedings. Lock argues the trial court also erred when it declined to conduct an evidentiary hearing after Lock raised the issue of racial bias during motion in limine arguments before her trial on remand.

American Family asserts that Lock waived her claim of systemic and institutional bias and request for a hearing specific to racial bias because she failed to request such a hearing post-verdict. American Family also contends that Lock failed to establish a prima facie case where an objective observer could conclude that racial bias was a factor in the jury's verdict.

Due process requires a fair trial. Tatham v. Rogers, 170 Wn. App. 76, 90, 283 P.3d 583 (2012). "Under Washington law, the right to a jury trial includes the right to an unbiased and unprejudiced jury." State v. Jackson, 75 Wn. App. 537, 543, 879 P.2d 307 (1994). Appeals to racial or ethnic bias in the justice system cannot be permitted. See State v. Zamora, 199 Wn.2d 698, 723, 512 P.3d 512 (2022); State v. Horntvedt, 29 Wn. App. 2d 589, 599, 539 P.3d 869 (2023). Civil or criminal, "a verdict affected by racism violates fundamental concepts of fairness and equal justice under law." Henderson, 200 Wn.2d at 421. In State v. Jackson, this court held the trial court erred when it ruled on Jackson's motion for a new trial without conducting an evidentiary hearing pursuant to his prima facie showing of racial bias. 75 Wn. App. at 544. This court also noted that "[t]he fact that Jackson did not agree to an evidentiary hearing below does not constitute a waiver of his right to argue that he was denied the right to due process." Id. at 544 n.4. We disagree with American Family's assertion that a party is necessarily barred from raising a claim of racial bias if the party did not request an evidentiary hearing below. See id. But we do agree with American Family that Lock failed to establish a prima facie showing of racial bias.

To advance her argument, Lock correctly asserts, as recognized by our state Supreme Court in Henderson, 200 Wn.2d at 421, that, "[w]hether explicit or implicit,

purposeful or unconscious, racial bias has no place in a system of justice." The Henderson court acknowledged if racial bias is a factor in a judge or jury's decision, the decision necessarily does not achieve substantial justice and must be reversed. Id. at 421-22. The court addressed the issue of whether the plaintiff was entitled to an evidentiary hearing after she moved for a new trial arguing that defense counsel's appeals to racial bias affected the jury verdict. Id. at 422. The court held if a party presents a prima facie showing that racial bias affected the verdict, the party is entitled to an evidentiary hearing. Id. at 438. The court explained:

> In ruling on a motion for a new civil trial, "[t]he ultimate question for the court is whether an objective observer (one who is aware that implicit, institutional, and unconscious biases, in addition to purposeful discrimination, have influenced jury verdicts in Washington State) could view race as a factor in the verdict."

Id. at 422 (alteration in original) (quoting State v. Berhe, 193 Wn.2d 647, 665, 444 P.3d 1172 (2019)); see also Henderson, 200 Wn.2d at 435 (discussing burden of proof at evidentiary hearing).

A determination of whether racism could have affected the verdict requires a review of the totality of circumstances of the trial. Henderson, 200 Wn.2d at 439. A reviewing court "may only consider the evidence and argument that was before the trial court at the time of the hearing on the motion for a new trial." Simbulan v. Nw. Hosp. & Med. Ctr., No. 85114-4-I, slip op. at 13 (Wash. Ct. App. Aug. 26, 2024), https://www.courts.wa.gov/opinions/pdf/851144.pdf (emphasis added). In Henderson, the court held that defense counsel's trial references to Henderson as combative and the defense's arguments that Henderson was solely motivated by financial gain and was exaggerating her injuries evoked stereotypes that portrayed Henderson as an

15

angry Black woman and as "untrustworthy, lazy, deceptive, and greedy." 200 Wn.2d at 436-37. As this court recently clarified, we review a trial court's decision under the Henderson test de novo. Simbulan, slip op. at 11.

Without a verdict to challenge at the time of Lock's request for a hearing, Lock necessarily could not establish a prima facie case under Henderson. Lock asks this court to broaden the reach of the Henderson framework to apply to inherently biased pretrial judicial rulings in addition to a party's conduct during trial. The Henderson facts were specific to a party's objective appeals to a factfinder's racial bias and such appeals' objective effect on the outcome of the trial, whether by jury or bench trial verdict. Henderson, 200 Wn.2d at 439-40 (discussing the burden at a CR 59 evidentiary hearing upon prima facie showing of racial bias); see also Simbulan, slip op. at 23-24 (contrasting facts to party's flagrant appeals in Henderson and appeals in the criminal context). Lock conceded at oral argument that the application of Henderson to pretrial judicial bias would be "a brave new world," and proposed that a pretrial evidentiary hearing on judicial racial bias require a neutral arbiter, such as a special master.

However, even if this court were to extend Henderson to require an evidentiary hearing to examine judicial rulings possibly tainted by a judge's own racial bias, Lock fails to make a prima facie showing under the Henderson standard. In her CR 16 motion and motion in limine arguments, Lock only offered conclusory arguments. She claimed that the trial court's rulings were racially biased, degrading, and one-sided, but failed to offer evidence of how a judge's purported bias was objectively activated to impact any specific ruling. See Henderson, 200 Wn.2d at 436-38 (describing how defense counsel's allusions to racial stereotypes implicitly invited jurors to make decisions on

improper grounds rooted in prejudice or racial biases). Courts must "focus on the effect of racially biased comments or actions, not the intent of the actor, when evaluating whether a verdict has been affected by racism." Id. at 434. A basic disagreement with the factfinder's decision is not sufficient to meet the test. See Simbulan, slip op. at 24 (stating the unacceptable risk of the misapplication of the Henderson standard to tempt parties "to proactively introduce evidence of their own ethnicity or primary language to ensure another chance at litigation in the event of an unfavorable verdict").

In her briefing, Lock asks this court to consider the totality of circumstances of the trial to conclude that American Family's misrepresentations affected the trial court's rulings favoring American Family "over Asian Lock and her Black attorney," but she again fails to explain how such conduct was racially framed or how it perpetuated racial stereotypes to objectively activate the trial court's alleged systemic and institutional racial bias against her. Nor does Lock present any argument as to how the institutional racial bias impacted the jury's verdict in her favor. We cannot say systemic and institutional bias is at work in a trial court's ruling or in a verdict merely because the party and/or their attorney is a person of color and the ruling was unfavorable or the verdict ostensibly insufficient. See id. Indeed, not all express recognitions of race carry the danger of appealing to potential racial bias. Zamora, 199 Wn.2d at 715.

Because Lock has not established a prima facie case of racial bias, it follows that the trial court did not err in denying her requests for an evidentiary hearing. That does not mean that Lock is without an avenue to assert a claim of judicial bias, which we address next.

Judicial Bias

Aside from asking this court to extend Henderson, Lock contends multiple trial court's rulings were unfair and biased toward American Family in violation of the appearance of fairness doctrine. Because Lock offers insufficient briefing to support her argument, we reject her claim.

The appearance of fairness doctrine applies to judicial and quasi-judicial decisionmakers. State v. Finch, 137 Wn.2d 792, 808, 975 P.2d 967 (1999). Lock correctly asserts the doctrine requires a judge to be impartial and also appear to be impartial. Id. "[T]rial before an unbiased judge is an essential element of due process." In re Pers. Restraint of Davis, 152 Wn.2d 647, 692, 101 P.3d 1 (2004). However, "[t]here is a presumption that a trial judge properly discharged his/her official duties without bias or prejudice." Id. A party asserting judicial bias "must provide specific facts establishing bias" to overcome the presumption, such as evidence on the record of the judge having a personal interest in the outcome or the judge's personal prejudice against the party. Id. at 692-93; see also Tatham, 170 Wn. App. at 90-91 (providing examples of evidence of judicial bias requiring recusal under due process). Mere speculation of judicial bias is insufficient. Tatham, 170 Wn. App. at 96. "Judicial rulings alone almost never constitute a valid showing of bias." Davis, 152 Wn.2d at 692.

Lock's briefing mentions uncited judicial rulings on remand that, based on Lock's statement of the case, could apply to rulings issued by multiple judges. Lock vaguely describes the rulings and fails to offer evidence of any of the judicial officers' biases against her. See RAP 10.3(a)(6). The mere labeling of a ruling as biased is not evidence of systemic or implicit bias at work in the perversion of a specific legal

determination. If courts did not require more, they would open the door to bald accusations of bias halting the wheels of justice simply because the system is served by human decisionmakers. See Berhe, 193 Wn.2d at 663 (acknowledging everyone lives with unconscious biases).

We hold that Lock's bald accusations are insufficient to defeat the presumption of an impartial judiciary.

<u>Attorney Fees</u>

Lock next contends the trial court should have granted her attorney fees for American Family's bad faith litigation conduct that she was initially granted by the first trial judge in 2017. Lock argues because a court may award attorney fees for bad faith litigation conduct and American Family acted in bad faith contrary to its fiduciary duty to Lock as its insured, "[t]he only fair and just remedy would be to award Lock the 2017 attorney fees and costs as filed in 2017 with interest from that date." We decline Lock's request.

In Lock's first appeal, this court declined to address Lock's challenge to the first trial court's order vacating it's previous order granting her attorney fees for American Family's bad faith litigation tactics. Lock, 12 Wn. App. 2d at 925 n.4. Because the case was remanded for trial on Lock's common law insurance bad faith claim, this court instead vacated the trial court's order awarding or denying attorney fees, and noted any fees should be addressed on remand. Id. On remand, Lock moved for and was twice denied attorney fees as sanctions, and other requests not at issue in this appeal, for American Family's bad faith litigation conduct.

A prevailing party does not recover attorney fees absent a contract, statute, or recognized ground of equity. Rorvig v. Douglas, 123 Wn.2d 854, 861, 873 P.2d 492 (1994); see Berryman v. Metcalf, 177 Wn. App. 644, 656, 312 P.3d 745 (2013). A "trial court has the inherent authority to sanction a party for 'bad faith,'" Including procedural bad faith. Hedger v. Groeschell, 199 Wn. App. 8, 13-14, 397 P.3d 154 (2017). "Procedural bad faith is unrelated to the merits of the case and refers to 'vexatious conduct during the course of litigation.'" Id. at 14 (quoting Rogerson Hiller Corp. v. Port of Port Angeles, 96 Wn. App. 918, 928, 982 P.2d 131 (1999)). Bad faith litigation can provide an equitable basis for attorney fees, such as conduct that delays or disrupts litigation. Rogerson Hiller Corp., 96 Wn. App. at 927-28; State v. S.H., 102 Wn. App. 468, 475, 8 P.3d 1058 (2000).

This court reviews a trial court's decision to deny attorney fees under an abuse of discretion standard. Pierce v. Bill & Melinda Gates Found., 15 Wn. App. 2d 419, 447, 475 P.3d 1011 (2020). A trial court abuses its discretion if its decision is manifestly unreasonable, exercised on untenable grounds, or based on untenable reasons. Roats v. Blakely Island Maint. Comm'n, Inc., 169 Wn. App. 263, 284, 279 P.3d 943 (2012). A trial court's decision is manifestly unreasonable if it is outside the range of acceptable choices. Id. This court's scope of review is generally bound by the trial court's factual findings and will not attempt to make factual findings based on an incomplete record in which the appealing party did not properly brief or argue the elements of a claim. Dalton M, LLC v. N. Cascade Tr. Servs., Inc., 2 Wn.3d 36, 53, 534 P.3d 339 (2023); see RAP 2.5(a), 10.3(a)(6). A trial court must make a finding of bad faith to assign sanctions. Hedger, 199 Wn. App. at 14. "A finding of 'inappropriate and improper' conduct 'is

tantamount to a finding of bad faith.'" <u>Andren v. Dake</u>, 14 Wn. App. 2d 296, 321, 472 P.3d 1013 (2020) (quoting <u>S.H.</u>, 102 Wn. App. at 475)).

Lock argues that American Family engaged in bad faith litigation tactics and this court's failure to sanction American Family for its conduct sends a clear message to insurers that "improper removals to federal court, cheap trial tactics, flat out lies, lying, manipulating the court to delay resolution, avoiding depositions, refusing to disclose witnesses, and otherwise litigating abusively is condoned by the judicial system." Lock does not identify specific conduct with cites to the record. At the end of her argument, she includes a string citation to the record untethered to any facts.

"It is an appellant's responsibility to provide 'argument in support of the issues presented for review, together with citations to legal authority and references to relevant parts of the record.'" <u>Romero v. Dep't of Soc. & Health Services</u>, 30 Wn. App. 2d 323, 544 P.3d 1083 (2024) (quoting RAP 10.3(a)(6)). "Passing treatment of an issue or lack of reasoned argument is insufficient to merit judicial consideration." <u>Palmer v. Jensen</u>, 81 Wn. App. 148, 153, 913 P.2d 413 (1996); <u>see</u> <u>Nelson v. Duvall</u>, 197 Wn. App. 441, 460, 387 P.3d 1158 (2017). This case involves more than 9,500 pages in the record and, by Lock's count, more than a thousand pleadings between the parties. We decline to fish in the record to construct an argument for bad-faith-litigation sanctions on Lock's behalf. <u>See</u> <u>State v. Cox</u>, 109 Wn. App. 937, 943, 38 P.3d 371 (2002).

In her brief's introduction, Lock seems to identify the district court judge's ruling stating that American Family "flat-out lied to the Court" about the amount in controversy and used "cheap trial tactics" by removing the case to obtain summary judgment as a legal determination of bad faith litigation that mandates attorney fees. But the district

court judge indeed imposed a sanction and awarded attorney fees. Lock, 12 Wn. App. 2d at 912. Lock cites to no authority to support her indirect suggestion that a trial court's denial of additional sanctions for the same conduct is an abuse of discretion. Where a party fails to cite to relevant authority, we generally presume that the party found none. State Constr., Inc. v. City of Sammamish, 11 Wn. App. 2d 892, 906, 457 P.3d 1194 (2020) (citing Edmonds Shopping Ctr. Assocs. v. City of Edmonds, 117 Wn. App. 344, 353, 71 P.3d 233 (2003)).

Overall, Lock fails to demonstrate how the denials of her two motions on remand were manifestly unreasonable, exercised on untenable grounds, or untenable. Rather, Lock makes a conclusory argument that the trial court "gave no credence to the prior findings of [American Family's] bad faith litigation tactics" and repeatedly cites to the first trial court's initial findings of American Family's bad faith litigation tactics. We disagree with Lock's assertion and her reliance on the first trial court's findings as a factual basis to support her new attorney fees request. First, after each of Lock's attorney fees requests, which were made before two different judges, the trial court reviewed and considered the motions, as well as American Family's responses and Lock's replies. Second, because the first trial court vacated its prior order granting attorney fees based on its further understanding of the procedural record, such factual findings simply do not exist.[12] See Lock, 12 Wn. App. 2d at 919.

Lock argues that American Family's bad faith litigation tactics violated its fiduciary duty and it should be sanctioned for its unfair treatment of Lock as its insured.

---

[12] Notably, even if it could be interpreted that this court's vacating the trial court's order of denying attorney fees also vacated the first trial court's ruling vacating its own previous order awarding attorney fees, this court also vacated any order awarding attorney fees. Lock, 12 Wn. App. 2d at 925 n.4.

Lock cites <u>Van Noy v. State Farm Mutual Automobile Insurance</u> for the principle that an insurer must deal fairly with its insured, "'giving equal consideration in all matters to the insured's interests as well as its own.'" 142 Wn.2d 784, 793, 16 P.3d 574 (2001) (quoting <u>Van Noy v. State Farm Mut. Auto. Ins. Co.</u>, 98 Wn. App. 487, 492, 983 P.2d 1129 (1999)). However, <u>Van Noy</u> is inapposite. <u>Van Noy</u> involved insureds' lawsuit against automobile insurer to recover for breach of contract, breach of fiduciary duty, bad faith claims handling, and violation of the CPA, arising after the insurer disallowed PIP benefits. <u>Id.</u> at 787-89. <u>Van Noy</u> thus did not involve an attorney fees award as a sanction for bad faith litigation conduct. Comparatively, all the CPA and IFCA claims were dismissed in the instant case. As this court held in <u>Lock</u>, postlitigation conduct of the insurer's counsel is not the basis for insurance bad faith liability.[13] 12 Wn. App. 2d at 919. And procedural bad faith is unrelated to the merits of the case. <u>Hedger</u>, 199 Wn. App. at 14.

Lock did not meet her burden of establishing the trial court abused its discretion in denying her requests for attorney fees.

<u>American Family's Attorney Fees Request</u>

American Family requests attorney fees and costs under RAP 18.1. American Family specifically argues because Lock's appeal was frivolous, it is entitled to attorney fees under RCW 4.84.185 and RAP 18.9(a). Lock's appeal was not frivolous. "An appeal is frivolous if, considering the entire record, the court is convinced that the appeal presents no debatable issues upon which reasonable minds might differ and that

---

[13] The <u>Lock</u> court expressly distinguished the direct contact conduct by American Family's corporate counsel from the postlitigation conduct of trial counsel. <u>Lock</u>, 12 Wn. App. 2d at 924.

it is so devoid of merit that there is no possibility of reversal." Lutz Tile, Inc. v. Krech, 136 Wn. App. 899, 906, 151 P.3d 219 (2007). As we have previously acknowledged, this court in Lock expressly reversed orders granting or denying attorney fees and indicated that a party's request for fees should be addressed on remand. 12 Wn. App. 2d at 925 n.4. Lock did just that. An appeal is not frivolous merely because the appellant's arguments are rejected. Streater v. White, 26 Wn. App. 430, 435, 613 P.2d 187 (1980). We deny American Family's motion for attorney fees.[14]

We affirm.[15]

Coburn, J.

WE CONCUR:

Chung, J.

Hazelrigg, A.C.J.

---

[14] Lock also requests this court to sanction American Family for its purported bad faith litigation tactics on remand. We decline to do so. This court will not find an act of bad faith litigation in the first instance. See Dalton M, LLC, 2 Wn.3d at 53.

[15] Because we affirm, we need not address American Family's alternative arguments raised in its cross-appeal.